## STATE OF CONNECTICUT *v.* ANDREW ALEXANDER
### (SC 16031)

McDonald, C. J., and Norcott, Katz, Sullivan and Vertefeuille, Js.

Argued May 25—officially released August 15, 2000

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Nancy Dolinsky*, assistant state's attorney, for the appellant (state).

*Monte P. Radler*, supervisory assistant public defender, with whom, on the brief, were *Neal Cone*, assistant public defender, and *Christine J. Haave*, special public defender, for the appellee (defendant).

*Opinion*

NORCOTT, J. After a jury trial, the defendant, Andrew Alexander, was convicted of sexual assault in the fourth degree in violation of General Statutes § 53a-73a[1] and

---

[1] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

risk of injury to a child in violation of General Statutes (Rev. to 1991) § 53-21.[2] The defendant appealed the judgment of conviction[3] to the Appellate Court claiming that: (1) the state's closing argument infringed on his constitutional right to be present during trial; and (2) the state committed prosecutorial misconduct during its closing argument, thereby depriving the defendant of his due process right to a fair trial. *State* v. *Alexander*, 50 Conn. App. 242, 246, 718 A.2d 66 (1998). The Appellate Court agreed with both claims, reversed the defendant's judgment of conviction, and remanded the case for a new trial. Id., 260. We granted the state's petition for certification to appeal limited to the following issues: (1) "Whether, under the circumstances of this case, the state violated the defendant's constitutional right to be present at trial?" and (2) "Whether the state's remarks to the jury amounted to prosecutorial misconduct?" *State* v. *Alexander*, 247 Conn. 927, 719 A.2d 1169 (1998). We answer the first question in the negative and the second question in the affirmative, and, accordingly, we reverse the judgment of the Appellate Court in part and affirm it in part.

The following relevant facts that the jury reasonably could have found are aptly set forth in the Appellate Court's opinion. "At the time of trial, the victim, C,[4] was

---

[2] General Statutes (Rev. to 1991) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] "The trial court imposed a total effective sentence of five years, suspended after one year, with five years probation and special conditions. The court denied the defendant's motion to open the judgment and motion to correct sentence." *State* v. *Alexander*, 50 Conn. App. 242, 246, 718 A.2d 66 (1998).

[4] In accordance with General Statutes § 54-86e, and in order to protect the victim's legitimate privacy interests, the victim's name is not used in this opinion.

twelve years old and in the seventh grade. The victim lived in Stamford with her mother, Kendra, a younger brother and twin sisters. The victim was in the second or third grade when she first met the defendant. The defendant was Kendra's boyfriend and the father of the victim's twin sisters. The defendant met Kendra in the fall of 1989. Kendra became pregnant by the defendant in the summer of 1990, and they agreed that the defendant would become involved as a father to their offspring. Because of his work schedule, the defendant maintained a residence in New York City. He resided with Kendra primarily on weekends after she became pregnant.

"At first, the victim liked the defendant. He was nice to her, took her to a park, gave her money for ice cream and never punished or hit her. About the time the victim was eight, the defendant began to abuse her sexually. He would enter her bedroom at night when the room was dark and, if she was asleep, would touch her to awaken her. The defendant would get into her bed, take off her panties and put his finger into her vagina, which hurt, and felt like a knife cutting into her. When C would tell the defendant to stop, he complied. He would also push up her nightshirt and touch her chest as well.

"In February, 1993, during school vacation when C was nine, she went to Massachusetts to visit her paternal grandmother. When her grandmother asked how the defendant was treating her, C said that the defendant did not treat her right and disclosed the abuse to her, saying that it had gone on since she was about eight. On her way back to Stamford, C told her [biological] father of the abuse.

"On March 2, 1993, C was interviewed by Patricia Nelson of the Stamford Child Guidance Center. An audiotape was made of the interview and played for the jury. In the interview, C stated that the abuse began

when she was eight, toward the end of the year. She said that the defendant had rubbed her vaginal area, but she was afraid that the defendant would be angry if she provided more detail and she did not want to get him in trouble.[5] . . . The victim also spoke about the abuse with Marie Williams, a social worker at the department of children and families (department).

"At trial, the state called the victim's father, Officer Martin Treadway of the Stamford police department, Nelson, Williams, and the victim's grandmother primarily as constancy of accusation witnesses. The state also called Nelson, Williams, and Stephen Spitz, a psychologist and consultant for the department, as expert witnesses. The defendant testified and denied ever abusing the victim. In addition, the defendant elicited character testimony from ten witnesses." *State* v. *Alexander*, supra, 50 Conn. App. 244–46. Additional facts and history will be set forth as needed.

I

The first certified issue on appeal is whether the state violated the defendant's constitutional right to be present at trial. The Appellate Court found that the prosecutor, in her closing arguments, inappropriately pointed out to the jury that the defendant was the only witness who had heard the testimony of every other witness and that this gave him the ability to tailor his testimony to coincide with that of the other witnesses. Id., 252. The state argues that this conduct is permissible under *Portuondo* v. *Agard*, 529 U.S. 61, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000), a recent United States Supreme Court decision.[6] We agree with the state.

---

[5] "At trial, C explained that her testimony was different from her audiotape interview because " 'now that you get a chance to think about what happened, it all comes back to you. Most of it does.' " *State* v. *Alexander*, supra, 50 Conn. App. 245.

[6] *Portuondo* was decided after the Appellate Court had issued its decision in the present case.

The following additional facts are relevant to the resolution of this claim. The prosecutor offered, in pertinent part, the following summation to the jury: "Who is best able to fabricate a complicated story designed to sway a jury? Your final decision must ultimately be based on whom you believe. The victim . . . or the defendant . . . . Now, you may recall that all the witnesses were sequestered.[7] And, that was so they couldn't hear what the other witnesses were saying so they couldn't tailor their testimony to each other's testimony. So that they couldn't contradict each other. But there was one witness who wasn't sequestered. There was one witness who heard everything. And, that was [the defendant], who has a built-in bias in the outcome of this case by virtue of the fact that he's the defendant." In rebuttal to the defendant's closing argument, the prosecutor added: "When you consider the credibility of the defendant's testimony, keep in mind that of all the witnesses here, he's the most obviously biased and interested one. He's the one who has the motive to distort the truth and fabricate the story. Think about it."

The Appellate Court determined that the prosecutor's comments violated the defendant's sixth amendment right to be present at trial.[8] *State* v. *Alexander*, supra, 50 Conn. App. 252. In reaching that conclusion, the Appellate Court relied on this court's decision in *State*

[7] Both parties conceded at oral argument before this court that the trial court had not entered a sequestration order. The state did remark that even without a sequestration order in the record, it was clear at trial that all the witnesses were absent during testimony, and that only the defendant was present during all testimony.

[8] At trial, the defendant did not make the specific objection he raises on appeal. He therefore sought, and the Appellate Court granted, review under the doctrine articulated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The court explained that "[t]he defendant's claim is reviewable because the record is adequate for review, and the claim implicates the defendant's fundamental constitutional right to be present during his trial." *State* v. *Alexander*, supra, 50 Conn. App. 248–49.

v. *Cassidy*, 236 Conn. 112, 127–28, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), in which we held that a defendant's sixth amendment right to be present at trial is violated when a prosecutor refers to a defendant's general opportunity to tailor his testimony to coincide with that of other witnesses. We now conclude, however, that *Portuondo* v. *Agard*, supra, 529 U.S. 61 requires us to overrule *Cassidy* and reverse the judgment of the Appellate Court on this issue.[9]

In *Portuondo*, the defendant similarly claimed that the prosecutor's summation, which referred to the defendant's presence during the trial and ability to fabricate or tailor his testimony, unlawfully burdened his sixth amendment right to be present at trial and to be confronted with the witnesses against him. Id., 64. The defendant argued that the court should extend the rationale of *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), wherein the court held that a defendant's failure to testify could not be used against him as an inference of guilt. *Portuondo* v. *Agard*, supra, 529 U.S. 65. The court declined to extend *Griffin* to the facts in *Portuondo*. Id.

First, the court in *Portuondo* explained, "[w]hat we prohibited the prosecutor from urging the jury to do in *Griffin* was something the jury is not permitted to do." Id., 67. Neither a jury nor a prosecutor may use a defendant's silence as an inference of guilt. Id. Further, it is reasonable to expect a jury not to infer such guilt since "the inference of guilt from silence is not always 'natural or irresistible.' " Id., quoting *Griffin* v. *California*,

[9] We note that our decision in *Cassidy* was founded upon the protection afforded by the federal, and not the state, constitution. See *State* v. *Cassidy*, supra, 236 Conn. 120 n.9. In the present case, the defendant was afforded the opportunity to submit a supplemental brief on the issue of the state constitutional claim. To the extent that he did so, we are not persuaded by his argument.

supra, 380 U.S. 615. A defendant, for example, may choose not to testify for a variety of reasons, including "fear that he will be made to look bad by clever counsel, or fear that his prior convictions will prejudice the jury." (Internal quotation marks omitted.) *Portuondo* v. *Agard*, supra, 529 U.S. 67.

On the contrary, however, "it is natural and irresistible for a jury, in evaluating the relative credibility of a defendant who testifies last, to have in mind and weigh in the balance the fact that he heard the testimony of all those who preceded him." Id., 67–68. The court further noted that "inferring opportunity to tailor from presence is inevitable, and prohibiting that inference (while simultaneously asking the jury to evaluate the veracity of the defendant's testimony) is demanding the impossible . . . ." Id., 68 n.1. Thus, when weighing a defendant's credibility, a jury is "perfectly entitled" to consider that the defendant had the opportunity to tailor his testimony to conform to that of the other witnesses. Id., 68.

Second, unlike *Griffin*, wherein the court prohibited the inference of guilt from silence, the prosecutor's comments in *Portuondo* questioned the defendant's credibility as a witness and were therefore "in accord with our longstanding rule that when a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.' " Id., 69, quoting *Brown* v. *United States*, 356 U.S. 148, 154, 78 S. Ct. 622, 2 L. Ed. 2d 822 (1958).

Therefore, by exercising his fifth amendment right to testify on his own behalf, it is axiomatic that a defendant opens the door to comment on his veracity. "It is well established that once an accused takes the stand and testifies his credibility is subject to scrutiny and close examination. *State* v. *Carter*, 189 Conn. 631, 640, 458 A.2d 379 (1983). A defendant cannot both take the stand

and be immune from impeachment. . . . An accused who testifies subjects himself to the same rules and tests which could by law be applied to other witnesses. *State* v. *Palozie,* 165 Conn. 288, 298, 334 A.2d 468 (1973)." *State* v. *McClendon,* 199 Conn. 5, 12, 505 A.2d 685 (1986). Finally, the Supreme Court has noted that when a defendant "assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well." *Perry* v. *Leeke,* 488 U.S. 272, 282, 109 S. Ct. 594, 102 L. Ed. 2d 624 (1989).

It has been established that "the Constitution does not forbid every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights." (Internal quotation marks omitted.) *Jenkins* v. *Anderson,* 447 U.S. 231, 236, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980). Similarly, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers* v. *Mississippi,* 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); see also *State* v. *Bonello,* 210 Conn. 51, 55, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 2103, 104 L. Ed. 2d 664 (1989); *State* v. *Jarzbek,* 204 Conn. 683, 693, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). Hearsay statements by an unavailable declarant may be admitted into evidence if they are deemed sufficiently reliable; *Ohio* v. *Roberts,* 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); the videotaped testimony of a child victim taken outside the physical presence of the defendant is also admissible when its admittance will enhance the truth-seeking function of the criminal trial; *State* v. *Bonello,* supra, 61; and a defendant may be deprived of his right to be present at trial if his behavior becomes intolerably disruptive. *Illinois* v. *Allen,* 397 U.S. 337, 344, 90 S. Ct. 1057, 25 L.

Ed. 2d 353 (1970); *Sekou* v. *Warden,* 216 Conn. 678, 696, 583 A.2d 1277 (1990). Since it is the search for truth that is the primary object of the confrontation clause; see *Ohio* v. *Roberts,* supra, 65–66; *California* v. *Green,* 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970); *Douglas* v. *Alabama,* 380 U.S. 415, 418–20, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); *State* v. *Bonello,* supra, 59–61; none of these actions denied the respective defendants their right to confrontation. It is, therefore, illogical to permit abrogation of a defendant's right to be present at trial based on the state's countervailing interests, yet disallow comment on the defendant's presence when the countervailing state interest relates directly to a crucial aspect of the truth-seeking process; i.e., the jury's ability to evaluate the credibility of the witnesses.

We conclude that the prosecutor's comments in the present case, which are nearly indistinguishable from those in *Portuondo,* do not infringe on the defendant's fifth or sixth amendment rights. See *Portuondo* v. *Agard,* supra, 529 U.S. 64. The prosecutors in both cases simply asked the jury to consider the fact that the defendant was present during other testimony. It is only "natural" for a jury to consider this opportunity. "[I]t is . . . [quite impossible] for the jury to evaluate the credibility of the defendant's testimony while blotting out from its mind the fact that before giving the testimony the defendant had been sitting there listening to the other witnesses." Id., 68. The comments did not invite the jury to draw an inference of guilt solely based on the defendant's exercise of his constitutional right to be present at trial and confront the witness. It was proper for the prosecutor to request that the jury generally consider the defendant's unique opportunity when determining the credibility of his testimony.[10]

---

[10] In its brief, the state suggests that this court adopt a mandatory instruction ensuring that the jury is aware that a defendant has a constitutional right to be present at trial. We decline to adopt such an instruction. We do, however, agree to an extent with Justice Stevens in his concurring opinion

In sum, we hold that the prosecutor violated no federal constitutional rights by commenting on the defendant's presence at trial and his accompanying opportunity to fabricate or tailor his testimony.

## II

The second certified issue on appeal is whether certain of the state's remarks to the jury amounted to prosecutorial misconduct. We agree with the Appellate Court's conclusion that the relevant remarks were improper.

Excerpts from the prosecutor's closing argument provide in relevant part: "[A] delay in reporting or inconsistencies has nothing to do with whether or not the victim is lying or telling the truth. And, that's up for you to judge. . . . Child molesters don't sexually assault their victim in front of witnesses. They wait until they're alone, isolated. They pick out a vulnerable child, such as an eight year old asleep in her bed. . . . [A]n absence of physical injury indicates nothing. Think of David and Goliath. That's another one on one contact where there was disparity of the size and power of the participants. The same disparity is found in almost every child sexual abuse case. The defendant is typically bigger, stronger, more experienced, better at verbal skills, and holds all the power in the relationship. The child, the victim, is small, weak, naive, inarticulate, and powerless. And must convince you people that her body has been violated. . . . You've probably all heard the saying 'wisdom comes from the mouths of babes.' Well, there's a

in *Portuondo*, wherein he noted that the court's ruling does not "deprive States or trial judges of the power either to prevent such argument entirely or to provide juries with instructions that explain the necessity, and the justifications, for the defendant's attendance at trial." *Portuondo* v. *Agard*, supra, 529 U.S. 76. It may be necessary in particular circumstances for a trial court to remind a jury of a defendant's constitutional right to be present at trial. We simply decline to require the instruction as mandatory in all instances.

reason for that saying. Just because we have a twelve year old victim, who was eight at the time the incident occurred, recalling what happened to her when she was eight and nine in front of a room full of strangers, doesn't mean we can't depend on her word. Because we should depend on her word. And, why? I'll tell you why. Common sense tells you that no one—no one would put herself through such an ordeal if nothing happened. . . . [The victim] knew when she came to court she had to tell the truth. *And that's what she did.* . . . Remember [the victim] said, 'I think it happened in the Fall. I was eight.' And, how does she remember she was eight? '[B]ecause I didn't know him when I was seven.' *That's how little kids think. They can't make this up.* . . . Nor did she exaggerate. Nor did she have any motive to lie. . . . There's no motive for her to lie. . . . [Y]ou're supposed to believe that as a result of that comment [the victim] fabricated this whole incident to get back at him. *I don't know of that many eight or nine year olds that are that sophisticated to fabricate a story involving sexual abuse.* . . . Now, what else could they say? That she fantasized this, made this all up in her head? Well, if you think an eight year old child would fantasize about a fifty year old man coming into her room at night and sticking his finger in her vagina, then you have a right to think that way. But, I know that you don't think that way. Because I know that your common sense tells you that eight year old children don't fantasize about that. . . . [The victim] suffered a lot of negative things after she disclosed. And, if she was lying, she would have changed her story. . . . And, why didn't she do it? *Because she told the truth.*" (Emphasis added.)

The Appellate Court found that the prosecutor committed misconduct by: (1) rendering her opinion as to the credibility of the victim's testimony; (2) referring to facts not in evidence; and (3) appealing to the pas-

sions and emotions of the jury. *State* v. *Alexander*, supra, 50 Conn. App. 257–58. The state argues that the remarks were taken out of context on appeal and reviewed under an incorrect standard.[11] While we agree that the Appellate Court improperly placed the burden on the state to prove harmlessness, we find that this misallocation in itself was harmless. Accordingly, we affirm the judgment of the Appellate Court with respect to the second certified issue.

"We have long recognized the special role played by the state's attorney in a criminal trial. 'He is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. If the accused be guilty, he should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider.' " *State* v. *Williams*, 204 Conn. 523, 537–38, 529 A.2d 653 (1987), quoting *State* v. *Ferrone*, 96 Conn. 160, 168–69, 113 A. 452 (1921).

---

[11] The state is correct in asserting that the Appellate Court improperly placed the burden on the state to prove harmless error. As both parties acknowledge, the burden properly lies with the defendant to prove substantial prejudice. See *State* v. *Richardson*, 214 Conn. 752, 760, 574 A.2d 182 (1990); *State* v. *Northrop*, 213 Conn. 405, 421, 568 A.2d 439 (1990).

"In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial." (Citation omitted.) *State* v. *Haskins*, 188 Conn. 432, 457, 450 A.2d 828 (1982). "Prosecutorial misconduct may . . . occur during the course of closing argument. . . . Such argument may be, 'in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact.' *State* v. *Fullwood*, 194 Conn. 573, 585, 484 A.2d 435 (1984)." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 539.

To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. *State* v. *Richardson*, 214 Conn. 752, 760, 574 A.2d 182 (1990); *State* v. *Northrop*, 213 Conn. 405, 421, 568 A.2d 439 (1990). In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process. *Darden* v. *Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); *State* v. *Williams*, supra, 204 Conn. 539. When analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct, one must not focus solely on the conduct of the prosecutor, but instead, the fairness of the trial as a whole should be at the forefront of the inquiry. *Smith* v. *Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982); *State* v. *Williams*, supra, 539–40; *State* v. *Couture*, 194 Conn. 530, 562, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). Further, because the trial court has the best vantage point for assessing the propriety of the remarks in issue, its determination is entitled to deference. For that reason the defendant must prove that the court's refusal to grant a new trial or give

an explicit curative instruction was a clear abuse of discretion. *State* v. *Northrop,* supra, 422 n.13; *State* v. *Fullwood,* supra, 194 Conn. 584; *State* v. *Glenn,* 194 Conn. 483, 493, 481 A.2d 741 (1984).

In order to determine whether prosecutorial misconduct amounts to a denial of due process, this court, in conformity with courts in other jurisdictions, has established a list of factors to consider. *State* v. *Williams,* supra, 204 Conn. 540. These factors include the extent to which the defendant invited the conduct; *State* v. *Fullwood,* supra, 194 Conn. 585; *State* v. *Falcone,* 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica,* 663 F.2d 1173, 1181 (2d Cir. 1981), cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982); the frequency of the misconduct; *State* v. *Couture,* supra, 194 Conn. 562–63; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States,* 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted by the court; *United States* v. *Modica,* supra, 1181; *Harris* v. *United States,* 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer,* 200 Conn. 642, 654, 513 A.2d 58 (1986); and the strength of the state's case. See *United States* v. *Modica,* supra, 1181; *State* v. *Couture,* supra, 564; *State* v. *Glenn,* supra, 194 Conn. 492. We will discuss each individual claim of prosecutorial misconduct seriatim.

A

Personal Expression of Opinion

We agree with the Appellate Court that the prosecutor improperly expressed her opinion of the victim's credibility and vouched for her witness. It is well established that a prosecutor may not express her own opinion, either directly or indirectly, as to the credibility of a witness or the guilt of the defendant. See, e.g., *State* v.

*Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989); *State v. Williams*, supra, 204 Conn. 541. "Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor." *State v. Williams*, supra, 541–43. A prosecutor's voucher for a witness is particularly dangerous for two reasons. First, such comments may convey the impression that the prosecutor is aware of evidence supporting charges against the defendant of which the jury has no knowledge. See *United States v. Young*, 470 U.S. 1, 18, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985). Second, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." Id., 18–19.

During the closing argument in the present case, the prosecutor expressed her own opinion, both directly and indirectly, as to the credibility of the victim's testimony. The prosecutor implied that the victim testified truthfully because she is young and therefore honest. The summation further contended that no child would possibly make up a story regarding sexual abuse. These statements are improper vouchers for the victim's credibility. Statements such as these are likely to sway a jury in favor of the prosecutor's argument without properly considering the facts in evidence. This is especially significant in the present case, where the credibility of the victim and the defendant comprised the principal issue of the case. Improper comments on the part of the prosecutor regarding the veracity of one party over the other can easily skew a proper jury deliberation. Thus, we agree with the Appellate Court that the prosecutor's comments were an inappropriate personal expression of opinion.

## B

### Comment on Facts Not in Evidence

We also conclude that the prosecutor improperly commented on facts not in evidence. "A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. *State* v. *Binet*, 192 Conn. 618, 631, 473 A.2d 1200 (1984). '[A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness.' ABA Model Code of Professional Responsibility DR 7-106 (C) (3) (1980). Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument. *State* v. *Williams*, supra, 204 Conn. 544." *State* v. *Williams*, 41 Conn. App. 180, 185, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996).

In the present case, the prosecutor did not confine herself to the record. She explained to the jury, "[t]hat's how little kids think," without any evidence to support this assertion. She stated that children "can't make this up . . . ." The summation suggested that a eight year old is not "sophisticated" enough to conjure up a story of sexual abuse, without any evidence supporting that contention. These are the principal issues set forth for the jury to determine on their own. It was, therefore, wholly improper for the prosecutor to insinuate the truthfulness of certain claims, thereby inducing the jury to review the case by means of facts not in evidence.[12]

## C

### Appeal to Emotion

Lastly, we agree with the Appellate Court that the prosecutor's argument inappropriately appealed to the

---

[12] See footnote 7 of this opinion. Since there is no evidence in the record that supports the prosecutor's statement that "all the witnesses were sequestered," we must also conclude that the prosecutor improperly commented on a fact not in evidence regarding any sequestration order.

emotions of the jury. An appeal to emotions, passions, or prejudices improperly diverts the jury's attention away from the facts and makes it more difficult for it to decide the case on the evidence in the record. *State* v. *Williams*, supra, 204 Conn. 545; *State* v. *Couture*, supra, 194 Conn. 562–64. An appeal to the emotions of the jury may arise from the use of personal and degrading epithets to describe the defendant. *Hall* v. *United States*, 419 F.2d 582, 587 (5th Cir. 1969); *State* v. *Williams*, supra, 545. Although a prosecutor may argue that the evidence supports the defendant's guilt, he may not brand the defendant guilty with the use of such epithets. *State* v. *Williams*, supra, 545–46; *State* v. *Couture*, supra, 562. "When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." *State* v. *Williams*, supra, 546.

After a careful review of the record, we conclude that in the present case, the prosecutor's comments during summation improperly appealed to the emotions, passions, and prejudices of the jury. By categorizing the contact between the "vulnerable . . . small, weak, naive" victim and the "bigger, stronger, more experienced" defendant as one of a "David and Goliath" type of relationship, the prosecutor elicited powerful feelings of disgust in the average juror. This behavior made it extremely difficult for the jury to focus on the actual facts in evidence in order to make a rational decision of whom to believe. In fact, while comments regarding "an eight year old child [fantasizing] about a fifty year old man coming into her room at night and sticking his finger in her vagina" are relevant to the issue at hand, they do prey on the jury's vulnerability to such strong and negative imagery. These comments, therefore, worked to undermine the emotional neutral-

ity of the jury. These comments fixated the jury's attention on either irrelevant factors or on emotional responses that diverted its attention from the true issues of the case and, therefore, were improper.

In sum, we agree with the Appellate Court and the defendant that the prosecutor's comments during summation "invited the jury to ignore the facts of the case and were so pervasive throughout the state's summation that they infected the fairness of the entire trial." *State* v. *Alexander*, supra, 50 Conn. App. 258–59. We also emphasize the fact that the improper comments were made during both the prosecutor's initial summation and later rebuttal argument. Accordingly, this was not a case in which the defendant's comments during closing argument invited the prosecutor's comments in response. This factor contributes to the "pervasive" theme that is central to our decision. We further agree with the Appellate Court that the prosecutorial misconduct amounted to a violation of due process. Id., 259. As the Appellate Court stated: "[W]e do not believe that the misconduct was invited by any conduct or argument of the defense. We believe that the seriousness of the misconduct is reinforced by the frequency of its occurrence during the state's closing argument. The improper comments directly addressed the critical issue in this case, the credibility of the victim and the defendant. There were no curative measures adopted, and the state's case was not particularly strong in that it rested on the credibility of the victim." Id. Accordingly, we agree with the Appellate Court's conclusion that the prosecutorial misconduct denied the defendant his due process right to a fair trial. Id., 260.

The judgment of the Appellate Court is reversed with respect to its conclusion that the state violated the defendant's constitutional right to be present at trial; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.