# STATE OF CONNECTICUT *v.* DENNIS SINGLETON
## (AC 24726)

Flynn, Bishop and McDonald, Js.*

Argued January 5—officially released May 23, 2006

* The listing of judges reflects their status on this court as of the date of oral argument.

*Aaron J. Romano*, special public defender, for the appellant (defendant).

*Susan C. Marks*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Mary Ann Hults*, former assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Dennis Singleton, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, the defendant claims that his due process right to a fair trial was violated as a result of prosecutorial misconduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 28, 2000, Bridgeport police detectives Daniel Kalagian and Leonard Sattani were conducting narcotics surveillance from an undercover van parked in the Marina Village housing development. Kalagian remained in the driver's seat while Sattani observed transactions from the rear window. Sattani observed the defendant exit a large orange construction truck, walk toward a dealer and engage in a hand-to-hand transaction in which the defendant exchanged money for several bright yellow items. After the transaction was complete, the defendant got into the passenger side of the construction truck, which was driven away.

Kalagian and Sattani followed the orange construction truck. They also radioed the tactical narcotics team, which was comprised of uniformed officers who were to wait to be informed of drug transactions so that they could make the arrests. Kalagian and Sattani informed the tactical narcotics team of the location of the transaction and gave a description of the defendant, stating that he was a black male wearing brown construction type overalls and was seated in the passenger seat of a large orange construction truck with "White Oak Con-

struction" written on the side. Officer Kenneth Rotunno, who was part of the tactical narcotics team, received that radio transmission and located the orange truck traveling on a street with Kalagian and Sattani's surveillance van following it. Rotunno pulled in front of the construction truck, stopping its progress.

Sattani and Rotunno proceeded to the passenger side of the orange truck. Rotunno found that the passenger door was locked and observed the defendant get up from the passenger seat, walk to the back of the truck, reach into his pants pocket, pull out two small yellow packets of suspected narcotics, drop them on the floor of the truck, return to the passenger side of the truck and unlock the door. Rotunno turned the defendant over to his partner, Officer Larry Morgan, who handcuffed the defendant. Rotunno seized the yellow packets from the floor of the truck. These packets appeared to Sattani to be the same ones that he had seen earlier in the hand-to-hand transaction. A field test performed by Rotunno and a subsequent test performed by the state toxicology laboratory indicated that the substance in the packets was heroin.

The defendant was charged with and convicted of possession of narcotics. This appeal followed.

We first set forth the standard of review. The defendant did not object to the instances of claimed prosecutorial misconduct and seeks review of his unpreserved claims pursuant to *State* v. *Stevenson*, 269 Conn. 563, 849 A.2d 626 (2004). "Regardless of whether the defendant has objected to an incident of misconduct, a reviewing court must apply the . . . factors [set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)] to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial." *State* v. *Stevenson*, supra, 573.

Our Supreme Court also has held that "[g]iven the defendant's failure to object, only instances of grossly egregious misconduct will be severe enough to mandate reversal." *State* v. *Thompson,* 266 Conn. 440, 480, 832 A.2d 626 (2003).

"[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Stevenson,* supra, 269 Conn. 572.

Once the first step is complete and misconduct has been identified, we then must determine "whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial misconduct, therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Citation omitted; internal quotation marks omitted.) *State* v. *Thompson,* supra, 266 Conn. 460. "In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [the Supreme Court] . . . has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams,*

supra, 204 Conn. 540. In accordance with these princi-
ples, we will review the defendant's claim to determine
first whether the prosecutor engaged in misconduct
and second whether the defendant's right to a fair trial
was violated by such misconduct.

# I

## MISCONDUCT

The defendant claims that the prosecutor committed
four instances of misconduct. Although we agree that
some of the questions and remarks made by the prose-
cutor were improper, we conclude that on the basis of
precedents of our Supreme Court, they do not consti-
tute grounds for reversal on the basis of deprivation of
the right to a fair trial.

The defendant's first claim of prosecutorial miscon-
duct concerns the asking of several questions by the
prosecutor during cross-examination of the defendant,
which required the defendant to comment on the verac-
ity of the witnesses who had testified against him.[1] The

---

[1] The following colloquy occurred during the prosecutor's cross-examina-
tion of the defendant:

"[The Prosecutor]: Okay. So, Detective Sattani, who was actually doing
the surveillance, who says that he saw you approach a drug dealer and
exchange in a hand-to-hand transaction giving money for drugs. *Was he
wrong?*

"[The Defendant]: Yes, he was wrong.

"[The Prosecutor]: So, you were never involved in any such transaction?

"[The Defendant]: No, I wasn't.

"[The Prosecutor]: You're aware that you're under oath, sir?

"[The Defendant]: Yes, I am.

"[The Prosecutor]: Okay. So, you're saying that you weren't the person
that he must have seen during that transaction; correct?

"[The Defendant]: I'm the person he not seen.

"[The Prosecutor]: Okay. And when he said that he observed this transac-
tion, he immediately got in his surveillance van and they immediately got
behind this big orange truck and they immediately pulled that truck over
and that you were in it, *he must be wrong again*; is that right?

"[The Defendant]: I'm not quite sure what you're trying to ask me.

"[The Prosecutor]: Okay. Let me back up and I'll try to ask it a differ-
ent way.

"[The Defendant]: Yeah.

state conceded in its brief and during oral argument

"[The Prosecutor]: From the best that I can recall, Detective Sattani said that he's doing the surveillance with his partner, that he sees this drug transaction and that you're the buyer. That's what he testified; is that right?

"[The Defendant]: That's what he says.

\* \* \*

"[The Prosecutor]: Going back to where I was. Detective Sattani said that upon seeing you involved in this drug transaction, get back into the orange box truck, that he and his partner immediately follow this orange truck, it never left their sight, and they pulled this truck over. Do you remember hearing him say that?

"[The Defendant]: I heard him say that.

"[The Prosecutor]: Okay. And he says that you were in the truck that they pulled over; you heard him say that?

"[The Defendant]: Yes.

"[The Prosecutor]: And you agree that you were, in fact, stopped by these officers on this date and this time; is that correct?

"[The Defendant]: Yes.

"[The Prosecutor]: So, my question to you, sir, is, *is he lying*?

"[The Defendant]: Yes, he is.

"[The Prosecutor]: Okay. Let's talk about Kenny Rotunno, the guy with the beard who now works for Cablevision. He says that he approached this big orange truck, that it was the only one in the area. Do you remember him saying that?

"[The Defendant]: Yes.

"[The Prosecutor]: Okay. And that the door is locked—

"[The Defendant]: Um-hmm (affirmative).

"[Prosecutor]:—do you remember him saying that?

"[The Defendant]: Um-hmm (affirmative).

"[The Prosecutor]: He said that he asked you to open the door and that you did not. *Is he lying*?

"[The Defendant]: Yes, he is.

"[The Prosecutor]: He then said that you got up out of your seat and walked to the rear of the truck where he saw you drop some items to the floor and then you came back and opened the door. *He's lying about that, too*?

"[The Defendant]: Yes, he is.

\* \* \*

"[The Prosecutor]: You tested positive in a urine test for morphine use; isn't that true, sir?

"[The Defendant]: No, it's not.

\* \* \*

"[The Prosecutor]: Okay. So, as far as the positive morphine use in 1990, you're still saying that I must be wrong?

"[The Defendant]: That's correct.

"[The Prosecutor]: Okay. So, you're asking this court to believe, sir, that

that these questions asked during cross-examination were improper under *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002).

We first note that the defendant's conviction preceded *Singh*. A late appeal was allowed. At the time the case was tried, neither the prosecutor nor anyone else could have been guided by *Singh* because it had not yet been decided.[2] However, because "the evidentiary rule that it is improper to ask a witness to comment on another witness' veracity was well established"; (internal quotation marks omitted) *State* v. *Santiago*, 269 Conn. 726, 741, 850 A.2d 199 (2004); the rationale in *Singh* is applicable to the present case.

In *Singh*, the prosecutor compelled the defendant to comment on the veracity of other witnesses' testimony and emphasized the defendant's response during closing argument. *State* v. *Singh*, supra, 259 Conn. 704–706. Our Supreme Court adopted the rule that "it is improper to ask a witness to comment on another witness' veracity." Id., 706. The record in this case reveals that the prosecutor questioned the defendant three times about whether the state's witnesses were lying and three times about whether they were wrong. We conclude, as the state concedes, that the line of questioning about whether the state's witnesses had lied or were wrong violated the rule articulated in *Singh* and, therefore, was improper.

---

not only am I wrong about your previous drug use, but that *each and every one of the officers who testified as to your involvement in this case, that they're all wrong, too?*

"[The Defendant]: That is correct." (Emphasis added.)

[2] The defendant was convicted on December 8, 2000, and sentenced on February 16, 2001. More than one year later, in March, 2002, the decision in *State* v. *Singh*, supra, 259 Conn. 693, was released. Subsequent to that, and following a petition for a writ of habeas corpus, the defendant's appellate rights were restored by joint motion for judgment, which was granted on April 9, 2003.

The second instance of claimed misconduct occurred during final argument in the state's rebuttal. The prosecutor highlighted the defendant's testimony given in response to the prosecutor's improper questions that asked the defendant to comment on the veracity of the state's witnesses.[3] The prosecutor argued to the jury: "The defendant is essentially asking you to believe that all of the state's witnesses that you heard from were, in a word, wrong. I asked him, do you think they were all lying? And he said, "yes," each and every one of them in relation to him being involved in this incident. He says, they were all wrong, they were all lying." These remarks were an improper reiteration in final argument of questions at trial that the state already conceded were improperly asked. In *Singh,* our Supreme Court concluded that "closing arguments providing, in essence, that in order to find the defendant not guilty, the jury must find that witnesses had lied, are similarly improper." *State* v. *Singh,* supra, 259 Conn. 712. Here, the state was suggesting that the only way to acquit the defendant was to find that the state's witnesses had lied.

The defendant next argues that a third instance of misconduct occurred during closing argument when the prosecutor stated that it was the responsibility of the police officers to uphold the law and to take action if they saw that a law had been broken.[4] The defendant's argument is twofold. He claims that this remark violated *Singh* by providing that in order to find the defendant not guilty, the jury must find that the witnesses had lied, and that the remark violated *State* v. *Alexander,* 254 Conn. 290, 755 A.2d 868 (2000), by appealing to the jury's emotions. We are not persuaded.

___

[3] See footnote 1.

[4] The prosecutor stated: "In this case, it was the officers' responsibility to uphold the law. If they see that a law has been broken or been violated, they take action upon that. And that's what they testified to you about."

In *State* v. *Singh*, supra, 259 Conn. 712, our Supreme Court rejected the state's invitation to carve out an exception to the rule that a witness may not be asked to characterize another witness' testimony as a lie, mistaken or wrong. The court stated that "courts have long admonished prosecutors to avoid statements to the effect that if the defendant is innocent, the jury must conclude that witnesses have lied. . . . The reason for this restriction is that [t]his form of argument . . . involves a distortion of the government's burden of proof. . . . Moreover . . . such arguments preclude the possibility that the witness' testimony conflicts with that of the defendant for a reason other than deceit." (Citations omitted; internal quotation marks omitted.) Id., 709–10. However, in the present case, the prosecutor, in referring to a police officer's duty to uphold the law and to make arrests where appropriate, did not indicate that the jury had to find that the state's witnesses had lied in order to find the defendant not guilty, but commented on the officer's lack of motive to lie. "[I]t is not improper for a prosecutor to remark on the motives that a witness may have to lie, or not to lie, as the case may be." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 585, citing *State* v. *Thompson*, supra, 266 Conn. 466.

The defendant also claims, with respect to this third instance of alleged misconduct, that the prosecutor's comment concerning the responsibility of the police officers was an appeal to the emotions of the jury in violation of *State* v. *Alexander*, supra, 254 Conn. 290. "An appeal to emotions, passions, or prejudices improperly diverts the jury's attention away from the facts and makes it more difficult for it to decide the case on the evidence in the record"; id., 307; and, therefore, is improper. The prosecutor's statement that the role of officers was to uphold the law, taken in context, however, was part of an introduction in which she explained

the role of various individuals in the trial. We conclude that this introductory statement was not likely to divert the jury's attention from the facts or evidence in the record and that it, therefore, was not improper.

The defendant finally claims that a fourth instance of misconduct occurred during closing argument when the prosecutor stated: "We've got three officers who testified about the defendant's involvement. . . . What possible reason do they have to come here and tell you this whole story, according to the defendant, that's not true. . . . [Rotunno] took the day off work and came in here to testify to you about what happened on that day." The defendant's argument again is twofold. He claims that this remark violated *Singh* and *Alexander* for the reasons stated previously. We are not persuaded. This remark is not improper; rather it is an argument based on the ascertainable motives of the witnesses. "[I]t is not improper for a prosecutor to remark on the motives that a witness may have to lie, or not to lie, as the case may be." (Internal quotation marks omitted.) *State* v. *Stevenson,* supra, 269 Conn. 585.

## II

## PREJUDICE

Having concluded that there was misconduct, we next turn to a *Williams* analysis to determine whether the defendant's right to a fair trial was violated by such misconduct. See id., 572.

Under *Williams*, the first step in this analysis centers on whether the conduct was invited by the defense. After carefully reviewing the record, we find nothing in the defendant's exercise of his right[5] to testify on his own behalf that would lead a reasonable person to

[5] See Conn. Const., art. I, § 8 ("[i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel").

conclude that, in doing so, he invited the prosecutor to call him a liar.

"The second factor to be considered is the severity of the misconduct. [*State* v. *Williams,* supra, 204 Conn. 540.] There, our Supreme Court has set a high bar. See *State* v. *Thompson,* supra, 266 Conn. 479–80. In *Thompson,* a murder prosecution, our Supreme Court reviewed and found improper the prosecutor's repeatedly calling the defendant a 'killer'; id., 472; calling the testimony of the defendant's two principal witnesses 'reprehensible,' saying that they were 'lying' and lacked both 'moral fortitude' and 'conscience,' lived in a 'twisted world,' were not 'stand-up enough guy[s]' and let misguided loyalty to a friend influence their testimony, and that by doing so, they had 'reserved a place in hell for themselves'; id., 461; and they were truthful in their earlier, recanted pretrial statements and that to believe their trial testimony, jurors had to believe that the state's witnesses had lied, and suggesting to the jury that the witnesses would be arrested in connection with the homicide. Id., 467–69. Our Supreme Court in *Thompson* also concluded that the prosecutor improperly importuned the jury to give the victim's family justice by convicting the defendant; id., 473–74; and, finally, that he improperly urged the jury to use impeachment evidence against a third defense witness substantively. Id., 475–77. Nonetheless, our Supreme Court held that this misconduct 'was not, for the most part, severe.' Id., 479." *State* v. *Dews,* 87 Conn. App. 63, 77–78, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005). By the *Thompson* standard, which constrains our review, we conclude that the prosecutor's conduct was far less egregious than that in *Thompson* and that the defendant has not satisfied the severity prong.

We next turn to the frequency prong. See *State* v. *Williams,* supra, 204 Conn. 540. During cross-examination, the prosecutor asked the defendant six times

whether the state's witnesses were either lying or were wrong. The prosecutor then reiterated this testimony during closing argument.

We are also required to examine the centrality of the misconduct to the issues in the case. Id. The credibility of the witnesses was a central issue, and the state conceded that in its brief.

We next examine the strength of the state's case. See id. The state's case was relatively strong and this case did not rest solely on the credibility of witnesses. In *State* v. *Ceballos*, 266 Conn. 364, 416–17, 832 A.2d 14 (2003), our Supreme Court determined that the case was entirely a credibility contest between the victim and the defendant and, therefore, "without independent physical evidence to prove that the defendant had sexually assaulted [the victim], or even that [the victim] had been sexually assaulted at all, the significance of the state's attorney's improper conduct increases considerably." Similarly, *Singh* rested almost entirely on credibility. *State* v. *Thompson*, supra, 266 Conn. 483. In *Singh*, the state's evidence "was not particularly strong," and there was no "independent evidence to corroborate the identity of the defendant as the arsonist . . . ." *State* v. *Singh*, supra, 259 Conn. 724–25.

Here, the state had three witnesses, Kalagian, Rotunno and Sattani, testify about the events of January 28, 2000. Sattani observed the defendant engage in a drug transaction and enter the passenger side of an orange truck. Sattani testified that he never lost sight of the truck. Rotunno testified that after receiving a radio transmission, he blocked the pathway of the orange truck and proceeded to the passenger side of the vehicle, where he saw that the door was locked and observed the defendant get up from the passenger seat, walk to the back of the truck, reach into his pants pocket, pull out two small yellow packets of suspected

narcotics, drop them on the floor of the truck, return to the passenger side of the truck and unlock the door. Kalagian testified that after Sattani observed the transaction, they radioed the tactical narcotics team and followed the orange truck. Kalagian further testified that he observed Rotunno and Morgan having difficulty getting into the van and that it appeared as if someone was holding the door closed or it was locked. All of this testimony tended to show the defendant's exercise of dominion and control over the packets. Further, unlike *Singh* and *Cellabos*, there was forensic evidence connecting the defendant to the crime. Rotunno performed a field test on the substance in the packets that he found on the floor of the van, and the state toxicology laboratory also tested the substance in the packets. Both tests indicated that the substance in the packets was heroin.

We next assess the strength of the curative measures adopted by the court. See *State* v. *Williams*, supra, 204 Conn. 540. The defendant did not object at trial to the instances of misconduct at issue and did not request a curative instruction. "Given the defendant's failure to object, only instances of grossly egregious misconduct will be severe enough to mandate reversal." *State* v. *Thompson*, supra, 266 Conn. 480. Although the court did not give specific curative instructions and the defendant did not request any, the court reminded the jury in its general instructions, prior to trial and again following final argument, that it is to judge the credibility of witnesses and that arguments and statements made by attorneys do not constitute evidence. In its general instructions prior to trial, the court told the jurors that "you are the sole judges of the credibility of the witnesses." The court stated during its jury instructions following final argument that the testimony of police officials is not entitled to any special weight and that the jury should weigh and balance their testimony just

as carefully as it would the testimony of any other witness. "In the absence of a showing that the jury failed or declined to follow the court's [general] instructions, we presume that it heeded them." (Internal quotation marks omitted.) *State* v. *Thompson*, supra, 485. There is no suggestion in the present case that the jury did not follow the court's general instructions.

On the basis of our application of the six *Williams* factors to the facts of this case, we conclude that the prosecutorial misconduct did not deprive the defendant of his due process right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

---

* The listing of judges reflects their status on this court as of the date of oral argument.