# STATE OF CONNECTICUT *v.* SHELVONN JONES
## (AC 33484)

Lavine, Beach and Alvord, Js.

Argued September 12—officially released December 11, 2012

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *David Holzbach*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Shelvonn Jones, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[1] On appeal, the defendant claims that (1) prosecutorial impropriety deprived him of his right to a fair trial and due process of law, (2) the court's instruction to the jury improperly broadened the initial aggressor doctrine and deprived him of his right to assert a defense of self-defense by failing to instruct the jury (a) to analyze the complainant's perceptions from the perspective of a reasonable person, and (b) that a person cannot become an initial aggressor based on words alone, and (3) the court improperly denied his motion to suppress evidence of a knife and thus deprived him of his right to be free from unreasonable seizures. We agree with the defendant's first claim and therefore reverse the judgment of the trial court and remand the case for a new trial. We also address the third claim because it is likely to arise at a new trial; see *State* v. *Gonzalez*, 302 Conn. 287, 290, 25 A.3d

---

[1] The defendant was sentenced to four years and nine months of incarceration. The defendant was found not guilty of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2) and illegal possession of marijuana in violation of General Statutes § 21a-279 (c).

648 (2011); and conclude that the defendant's right to be free from unreasonable seizures was not violated.[2]

The jury reasonably could have found the following facts. On June 9, 2009, George Harris, the complainant, was walking home in the early evening when the defendant approached him, near a bus terminal. The defendant called out, "What's up, Old School?" and displayed a folding utility knife with its blade extended. Harris did not respond, but continued walking home. The two men went their separate ways.

Ninety minutes later, Harris went for a bicycle ride during which he again encountered the defendant. The defendant was intoxicated. The men approached one another, and Harris saw that the defendant had drawn his utility knife with its blade extended. Harris jumped off his bicycle and stood face-to-face with the defendant, in the middle of the street, to "ask him what . . . the problem was." The defendant then began "slashing" at Harris. Harris retreated at first, and the defendant cut him across his back. Harris mounted his bicycle, and then turned around and knocked the defendant prone using the front of the bicycle. The defendant cut Harris across the chest as Harris charged. Harris then jumped off his bicycle and wrestled with the defendant. He pulled the defendant's sweatshirt over the defendant's head, binding his arms and subduing him. The altercation blocked traffic. Seeing observers using their cell phones, Harris then went home, on foot, because he was afraid of being arrested.

Police responded to the scene on the basis of reports of a street robbery and found the intoxicated defendant. Police initially considered the defendant to be a victim and gave him a ride home for his safety. Shortly after

---

[2] In light of our decision to reverse the conviction, we do not reach the defendant's claim that the court's instruction to the jury improperly broadened the initial aggressor doctrine.

that, police received a radio report that the defendant may be a suspect in an assault with a knife. Officers went to his home and arrested him. Additional facts are set forth as necessary.

I

The defendant's first claim is that prosecutorial improprieties deprived him of his right to a fair trial under the due process clause of the fourteenth amendment to the federal constitution.[3] Given the particular facts of this case, we agree with the defendant.[4]

We reiterate the relevant legal standards. "In analyzing claims of prosecutorial impropriety, [a reviewing court] engage[s] in a two step analytical process. . . . [A reviewing court] first examine[s] whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, [a reviewing court] then examine[s] whether it deprived the defendant of his due process right to a fair trial." (Citations omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007). "[T]he burden is on the defendant to show . . . that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." *State* v. *Payne*, 303 Conn. 538, 563, 34 A.3d 370 (2012). "[W]hen a defendant raises a general due process claim, there can be no constitutional violation in the absence of harm to the defendant caused by denial of his right to a fair trial. The constitutional analysis and the harm analysis in such cases are one and the same." Id., 563–64.

"[A] determination of whether the defendant was deprived of his right to a fair trial . . . must involve

---

[3] In the alternative, the defendant claims we should reverse the court in the exercise of our supervisory powers over the administration of justice. We need not reach this claim.

[4] Although the defendant did not object to these statements, review is appropriate under *State* v. *Stevenson*, 269 Conn. 563, 573–75, 849 A.2d 626 (2004) (when improprieties are found, appellate court "must" review regardless of whether defendant objected).

the application of the factors set out by [our Supreme Court] in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . . Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 573, 849 A.2d 626 (2004). "The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Angel T.*, 292 Conn. 262, 287, 973 A.2d 1207 (2009).

There is a "presumption that counsel is competent and capable of acting on behalf of the defendant in matters concerning trial management"; *State* v. *Kitchens*, 299 Conn. 447, 486–88, 10 A.3d 942 (2011); and "[w]hen defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 575. "[As such] counsel's failure to object at trial, while not by itself *fatal* to a defendant's claim, frequently will indicate . . . that the challenged comments do not rise to the magnitude of constitutional error. . . . [P]rosecutorial [impropriety] claims [are] not intended to provide an avenue for the tactical sandbagging of our trial courts, but rather, to address gross prosecutorial improprieties that . . . have deprived a criminal defendant of his right to a fair trial." (Emphasis in original; internal quotation marks omitted.) Id., 575–76.

We "are mindful . . . of the unique responsibilities of the prosecutor in our judicial system. A prosecutor is not only an officer of the court . . . but is also a high public officer . . . [who] usually exercises great influence upon jurors." (Internal quotation marks omitted.) Id., 571–72. Even so, "[t]he touchstone of due process analysis in cases of alleged prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor." Id., 571.

"[I]t is a well established evidentiary rule that it is improper to ask a witness to comment on another witness' veracity." (Internal quotation marks omitted.) Id., 580. "Several reasons underlie th[is] prohibition . . . . First, it is well established that determinations of credibility are for the jury, and not for witnesses. . . . Consequently, [such] questions . . . invade the province of the jury. . . . Moreover, [a]s a general rule, [such] questions have no probative value and are improper and argumentative because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence. . . .

"Second, [such] questions . . . create the risk that the jury may conclude that, in order to acquit the defendant, it must find that the witness has lied. . . . This risk is especially acute when the witness is a government agent in a criminal case. . . . A witness' testimony, however, can be unconvincing or wholly or partially incorrect for a number of reasons . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 707–708, 793 A.2d 226 (2002).

## A

### Impropriety

The defendant claims that a number of the prosecutor's statements, questions and arguments during the

course of the trial deprived him of a fair trial.[5] The state acknowledges that four of the prosecutor's remarks were improper. The conceded improprieties consist of three questions on cross-examination compelling the defendant to comment on the veracity of the complainant and police officers and a reference to these questions in closing argument.

The three questions were as follows: (1) "[A]ll this testimony from Mr. Harris then about the bus stop; that was a lie?" (2) "And, all the police officers' testimony is a lie?"[6] (3) "So, what Officer Matthew Georgoulis

---

[5] Specifically, the defendant claims that the prosecutor improperly vouched for witnesses in closing argument, referred to facts outside the record, displayed frequent and gratuitous sarcasm conveying disdain, referred to the defendant's exercise of his right to attend his own trial, and made impermissible arguments about the defendant's credibility as compared to other witnesses.

[6] The Assistant State's Attorney cross-examined the defendant as follows:

"[Assistant State's Attorney]: Do you make change for people so that they can buy narcotics on the street?

"[Defendant]: What they do—

"[Defense Counsel]: Objection; speculation as to—

"The Court: Sustained.

"[Assistant State's Attorney]: Your Honor, that's—was direct testimony

"The Court: Sustained.

"[Assistant State's Attorney]: Mr. Jones, did Mr. Harris ask you for change so that he could get narcotics?

"[Defendant]: Yes, he did.

"[Assistant State's Attorney]: This is after you told him to 'F' off in front of the grocery store earlier that night?

"[Defendant]: Yes, it is.

"[Assistant State's Attorney]: *Now, all this testimony from Mr. Harris then about the bus stop; that was a lie?*

"[Defendant]: Yes, it was.

"[Assistant State's Attorney]: *And, all the police officers' testimony is a lie?*

"[Defendant]: I didn't say that. What part of their testimony?

"[Assistant State's Attorney]: The part of the testimony that contradicts everything about a robbery. Mr. Harris, I'm sorry, Mr. Jones, isn't it true that your whole story is made up to fit the fact that you were caught by the police before you could get away from the scene?

"[Defense Counsel]: Objection as to the form of the question.

"The Court: Overruled, it's cross-examination. You can answer the question.

"[Defendant]: No, that's not true." (Emphasis added.)

testified to, today is all false?"[7] In closing arguments, the prosecutor paraphrased the defendant's testimony as "I never said that, the police are lying apparently."[8]

The state agrees with the defendant that these four statements were improper. In light of the "conce[ssion] . . . [i]t is not necessary, therefore, for [a reviewing court] to determine whether these particular questions were, in fact, improper." *State* v. *Stevenson*, supra, 269 Conn. 580; see also *State* v. *Thompson*, 266 Conn. 440,

[7] The Assistant State's Attorney cross-examined the defendant as follows:

"[Assistant State's Attorney]: Mr. Jones, it's your testimony that you didn't have any marijuana?

"[Defendant]: No sir, I did not have any marijuana.

"[Assistant State's Attorney]: *So, what Officer Georgoulis testified to today is all false?*

"[Defendant]: Yes, sir.

"[Assistant State's Attorney]: And, everything that's missing from the reports, such as your injuries, the officers saying that you said you were trying to buy drugs, the fact that you claim you told them about the incident earlier on Spring Street, all that missing information is—

"[Defendant]: Not all of it's missing because they got the—they got in the report where I told them that he tried to—he approached me for crack cocaine. It's in the—it's in the report, so all that information is not missing." (Emphasis added.)

[8] In his closing argument, the Assistant State's Attorney stated as follows: "I ask you to . . . look at the way these witnesses testified; think about whether or not any of them have reasons to alter their testimony or falsely testify before the court. The officers have nothing to gain. [The complainant] is not gonna gain anything. He's not trying to avoid any kind of criminal charges; none were ever filed because the police found there weren't any to be charged against [the complainant]. What we do have is [the defendant], who has every reason in the world not to want to agree with the—the correct factual scenario. . . . So, he started concocting his version of the events and his version became a robbery where he's the victim . . . .

\* \* \*

"[The defendant], before he was able to create this story, even told Officer Reo, I was in the area to buy marijuana; ooh, now that's a bad statement when two hours later the police are arresting him, and all of a sudden he's got a bag of marijuana in his pocket. . . .

"Things are unraveling; one story won't work now. So, what's the answer; *the answer is, I never said that, the police are lying apparently.*

"[The defendant] then has to explain, hmmm, how I'm gonna, you know, how I'm gonna say I couldn't just run away from [the complainant], who was coming after me." (Emphasis added.)

461–62, 832 A.2d 626 (2003). We agree that the statements violate the principles set forth in *State* v. *Singh,* supra, 259 Conn. 693. We do not address whether any of the prosecutor's other remarks were improper because we conclude that in the context of this particular trial these four incidents of impropriety substantially prejudiced the defendant.

## B

### Due Process

We turn to analyze whether the conceded improprieties substantially prejudiced the defendant and deprived him of his due process right to a fair trial. See *State* v. *Stevenson,* supra, 269 Conn. 572. Although the state concedes that four statements were improper, it claims that these statements did not so prejudice the defendant as to deprive him of a fair trial and due process of law. Specifically, the state claims that these improprieties were not prejudicial in the context of the state's larger argument that the defendant had a motive to lie, which is a permissible argument under *State* v. *Thompson,* supra, 266 Conn. 466–67. Given the particular facts of this case, we do not agree.

We analyze the *Williams* factors in the context of the entire trial. Although we consider each *Williams* factor; see footnote 14 of this opinion; we begin by analyzing the three most pertinent factors in this case: the severity of the improprieties, the centrality of the improprieties to the critical issues of the case and the strength of the state's case.

In considering the severity of the improprieties, we give considerable weight to the fact that the defendant did not object to the improprieties. As noted, the absence of an objection or request to charge is a strong

indicator that any improprieties did not seriously jeopardize the defendant's right to a fair trial. *State* v. *Stevenson*, supra, 269 Conn. 575–76. Even so, "[b]eyond defense counsel's failure to object, in determining the severity of prosecutorial impropriety, [a reviewing court] look[s] to whether the impropriety was blatantly egregious or inexcusable. See *State* v. *Thompson*, supra, 266 Conn. 480." *State* v. *Fauci*, supra, 282 Conn. 51. However inexcusable it may be for a prosecutor to ask a defendant to comment on the veracity of the complainant and police officers, our Supreme Court has frequently ruled, though not invariably concluded, that a *Singh* violation is not so severe for the purpose of *Williams* analysis where a defendant does not object. See *State* v. *Angel T.*, supra, 292 Conn. 288–89; *State* v. *Stevenson*, supra, 593–95; but see *State* v. *Ceballos*, 266 Conn. 364, 415, 832 A.2d 14 (2003) (*Singh* violation was "sufficiently egregious to overcome the suggestion that defense counsel did not think it was unfair at the time"); *State* v. *Singh*, supra, 259 Conn. 723 ("[a]lthough many of the improprieties were not serious . . . the questions and comments about witnesses' veracity" constituted "notable exceptions"); cf. *State* v. *Warholic*, 278 Conn. 354, 399, 897 A.2d 569 (2006) (objection to *Singh* violation not dispositive of severity).

In light of the specific facts of this case, however, "the significance of the state's attorney's improper conduct increases considerably." *State* v. *Ceballos*, supra, 266 Conn. 417. First, the defendant was compelled to comment directly on the veracity of police witnesses. "Th[e] risk [*Singh* violations pose] is especially acute when the witness is a government agent in a criminal case." *State* v. *Singh*, supra, 259 Conn. 708. "Indeed, Connecticut courts routinely instruct juries that they should evaluate the credibility of a police officer in the same way that they evaluate the testimony of any other witness"; *State* v. *Thompson*, supra, 266 Conn. 469; no doubt to check the "heightened credibility that government agents are afforded by some jurors." (Internal

quotation marks omitted.) *United States* v. *Forrester*, 60 F.3d 52, 63 (2d Cir. 1995). Second, the defendant was compelled to comment directly on the veracity of the complainant. This elevated "the risk that the jury may conclude that, in order to acquit the defendant, it must find that the witness has lied." *State* v. *Singh*, supra, 708. Our Supreme Court has recognized that these dangers "[involve] a distortion of the government's burden of proof. [Id., 708, 709]." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 580–81.

Third, the prosecutor subtly but unmistakably mischaracterized the defendant's responses in a manner that "emphasized the improper nature of the questions he had forced [the defendant] to answer." *United States* v. *Richter*, 826 F.2d 206, 209 (2d Cir. 1987). In closing argument, the prosecutor summed up the defendant's testimony by stating: "Things are unraveling; one story won't work now. So what's the answer; the answer is, 'I never said that, the police are lying apparently.' " But in responding to the prosecutor's improper question, the defendant specifically did *not* testify that police were lying.[9] He did testify that the complainant lied.[10] And he did testify that one officer's testimony was "false"[11]—but that is to be distinguished from "lying,"

[9] The following exchange occurred during the Assistant State's Attorney's cross-examination of the defendant:

"[Assistant State's Attorney]: And, all the police officers' testimony is a lie?

"[Defendant]: I didn't say that. What part of their testimony?"

[10] The following exchange occurred during the Assistant State's Attorney's cross-examination of the defendant:

"[Assistant State's Attorney]: Now, all this testimony from Mr. Harris then about the bus stop; that was a lie?

"[Defendant]: Yes, it was."

[11] The following exchange occurred during the assistant state's attorney's cross-examination of the defendant:

"[Assistant State's Attorney]: So, what Officer Georgoulis testified to today is all false?

"[Defendant]: Yes, sir."

which means a *deliberate* falsehood.[12] "A witness' testimony . . . can be . . . wholly or partially incorrect for a number of reasons without any deliberate misrepresentation being involved . . . such as misrecollection, failure of recollection or other innocent reason." (Citation omitted; internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 708; see also *United States* v. *Richter*, supra, 826 F.2d 208–10. The prosecutor's mischaracterization of the defendant's testimony elevated the risk of "preclud[ing] the possibility that the witness' testimony conflict[ed] with that of the defendant for a reason other than deceit." *State* v. *Singh*, 259 Conn. 710.

The present case turns on the centrality of the impropriety to the state's case considered in light of the relative weakness of the evidence. The only evidence the state adduced as to who initiated the altercation was the complainant's testimony. The parties agree that this case entirely turned on credibility. The state argued this point with particular force both throughout its brief and at oral argument. There is no question that the conceded improprieties go directly to the credibility of the defendant as compared to the complainant and police officers, nor is there any debate that credibility was the central issue at trial. The complainant's rendition of events stood at odds with the testimony of the defendant, who maintained that it was the complainant who assaulted him.[13] The reasoning in *State* v. *Warholic*,

[12] See American Heritage College Dictionary (1981) p. 473 ("[F]alse" is defined as: "Contrary to fact or truth; without grounds; incorrect."); id., p. 754 ("[L]ie" is defined as: "A false statement or piece of information deliberately presented as being true . . . . To present false information with the intention of deceiving.").

[13] The defendant's account of events is abbreviated as follows. The defendant had been drinking very heavily. In the first encounter, the complainant asked the defendant whether he sold crack cocaine. The defendant told the complainant to leave him alone, and the complainant took offense and left. The defendant did not produce his knife at that time. In the second encounter, the complainant approached the defendant and dismounted his bicycle. The complainant asked the defendant whether he could make change for a fifty dollar bill. In order to induce the complainant to leave, the defendant agreed.

supra, 278 Conn. 354, guides our analysis of this *Williams* factor. In *Warholic*, the state conceded that credibility was the central issue because its case relied entirely on the testimony of the victim. Id., 397. Our Supreme Court concluded that the *"Singh* violation . . . impacted the crucial issue in the case." Id.; see also *State* v. *Angel T.*, supra, 292 Conn. 290 (*Singh* violations were central where case was "credibility contest between the victim and the defendant"); *State* v. *Ceballos*, supra, 266 Conn. 416–17 (same).

We turn to the strength of the state's case. The case turned entirely on the credibility of the complainant against that of the defendant. The state did not present any conclusive physical evidence or independent testimony that was "not affected by the prosecutorial improprieties." *State* v. *Bell*, 283 Conn. 748, 784, 931 A.2d 198 (2007). Our Supreme Court has ruled that a case turning entirely on the credibility of the victim is not strong. *State* v. *Angel T.*, supra, 292 Conn. 292–94 (state's case relying on testimony of minor victim and testimony of two corroborating witnesses "was not sufficiently strong so as to not be overshadowed by the impropriety"); *State* v. *Warholic*, supra, 278 Conn. 397 ("state's case was not strong because it lacked corroborating physical evidence"); *State* v. *Beaulieu*, 274 Conn. 471, 482–83, 876 A.2d 1155 (2005) ("state's case . . . was not strong" where victim's credibility was critical issue); *State* v. *Ceballos*, supra, 266 Conn. 416 ("when the prosecution's case rests on the credibility of the

He gave the complainant two twenty dollar bills, but in his inebriated state could not find the other bills to make change. The complainant kept the money. A scuffle ensued, during which the complainant threw his bicycle at the defendant, knocking him prone. The defendant drew a knife in a failed attempt to frighten the complainant, and inadvertently cut him during the fight. The complainant subdued the defendant by binding him up in his own sweatshirt, and the complainant ran off at the sound of approaching police cruisers. The defendant sustained wounds to his leg and hands.

victim, it is 'not particularly strong' "); *State* v. *Alexander*, 254 Conn. 290, 308, 755 A.2d 868 (2000) ("state's case was not particularly strong in that it rested on the credibility of the victim" [internal quotation marks omitted]). The present case does not have substantial evidence supporting a conviction that is unaffected by the *Singh* violations, which could ameliorate their prejudice, such as a confession; *State* v. *Ritrovato*, 280 Conn. 36, 67, 905 A.2d 1079 (2006); testimony of accomplices; *State* v. *Fauci*, supra, 282 Conn. 53–54; testimony of eyewitnesses other than the victim; *State* v. *Bell*, supra, 784; or physical evidence corroborating the complainant's testimony over the defendant's testimony; *State* v. *Thompson*, 266 Conn. 481–82. Accordingly, we conclude that "the state's evidence, while sufficient to result in a conviction, was not particularly strong." *State* v. *Singh*, supra, 259 Conn. 724.

The other three *Williams* factors collectively carry less weight given the facts in this case. We conclude that the improprieties were not invited, no curative instructions were given because they were not requested, and the improprieties were neither pervasive nor confined to a discrete portion of the trial.[14]

[14] Although the strength of the state's case, the centrality of the improprieties and the severity of the improprieties propels our analysis, we give due consideration to the other *Williams* factors. First we consider whether the improprieties were invited. The defendant contends that defense counsel did not invite the improprieties. The state has not presented arguments to the contrary. After our review of the record, we agree with the defendant that the improprieties were not invited.

We next consider curative measures. Because the defendant did not file a request to charge or otherwise ask for curative instructions specific to *Singh* violations, the only curative measures consisted of the standard jury instructions that the court gave at the end of evidence. "[A] general instruction does not have the same curative effect as a charge directed at a specific impropriety, particularly when the [impropriety] has been more than an isolated occurrence." *State* v. *Ceballos*, supra, 266 Conn. 413. Even so, "[w]hen defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269

Having reviewed all of the *Williams* factors in the context of the trial as a whole, we conclude that there is at least a reasonable likelihood that the verdict would have been different had the improprieties not occurred. *State* v. *Angel T.*, supra, 292 Conn. 287. The present case falls within a line of cases in which our Supreme Court has found that prosecutorial impropriety resulted in substantial prejudice depriving a defendant of a fair trial and due process, even in the absence of an objection or request for specific curative instructions from a defendant. As in the present case, in each of these cases, the defendant failed to object to or request curative instructions for *Singh* violations, the state's case was not strong and amounted to a credibility contest between the defendant and one or two of its witnesses, the impropriety augmented the state's case on a central issue of credibility rather than a peripheral point, the

Conn. 575. Where a defendant does not request specific curative instructions in response to an impropriety, our Supreme Court generally does not rule that standard instructions were deficient for the purpose of *Williams* analysis. See id., 597–98; see also *State* v. *Angel T.*, supra, 292 Conn. 291–92; *State* v. *Bell*, supra, 283 Conn. 783–84; *State* v. *Warholic*, supra, 278 Conn. 402–404; but see *State* v. *Ceballos*, supra, 417 ("not[ing] the general lack of curative measures").

Finally, we consider the frequency of the improprieties. The improprieties were three questions and a statement. They occurred at two distinct points on cross-examination and again during closing argument. When improprieties occur both during cross-examination of a defendant and in closing argument, our Supreme Court has concluded that such improprieties are "not isolated." *State* v. *Warholic*, supra, 278 Conn. 398 ("the instances of prosecutorial [impropriety] were not isolated because they occurred during both the cross-examination of the defendant and the prosecutor's closing and rebuttal arguments"); *State* v. *Ceballos*, supra, 266 Conn. 411 ("[P]rosecutorial improprieties that occurred . . . were not just isolated instances. Indeed, they occurred during both the questioning of witnesses and during argument."); but see *State* v. *Ritrovato*, supra, 280 Conn. 66–67 (one *Singh* violation and brief mention of it in closing argument constituted improprieties that were "limited in frequency"); *State* v. *Stevenson*, supra, 269 Conn. 593–95 (one *Singh* violation on cross-examination and another impropriety in closing did not constitute frequent improprieties). Accordingly, we conclude that while the improprieties in the present case were not pervasive, neither were they confined to a discrete portion of the trial.

impropriety was repeated on cross-examination and in closing arguments, and the impropriety was uninvited. See id., 288–95; see also *State* v. *Ceballos*, supra, 266 Conn. 407–17; *State* v. *Singh*, supra, 259 Conn. 723–25; cf. *State* v. *Alexander*, supra, 254 Conn. 300–308 (improprieties went to credibility though not *Singh* violations). In cases that would otherwise present a similar *Williams* analysis, our Supreme Court has not found substantial prejudice where one or more of these *Williams* factors is absent. See, e.g., *State* v. *Fauci*, supra, 282 Conn. 53–54 (state's case did not wholly rest on testimony of victims); *State* v. *Ritrovato*, supra, 280 Conn. 67 (state's case was strong in light of signed confession); *State* v. *Warholic*, supra, 278 Conn. 404 (only one *Singh* violation on central issue of credibility and other improprieties were not central); *State* v. *Stevenson*, supra, 269 Conn. 591–98 (defense invited improprieties, only two instances of impropriety, and independent physical evidence substantiated state's allegations); cf. *United States* v. *Sullivan*, 85 F.3d 743, 750 (1st Cir. 1996) (questions "induc[ing] a witness to say another witness lied on the stand" did not cause substantial prejudice as "the error was on a minor point" and "evidence of guilt . . . was very strong").

For a number of reasons, we are not persuaded by the state's argument that the prosecutor's statements were not prejudicial in the context of the state's larger, permissible argument that the defendant had a motive to lie. First, in *Singh*, our Supreme Court "expressly rejected . . . an exception to the prohibition of questions and comments on witnesses' veracity when the defendant's testimony is the opposite of or contradicts the testimony of other witnesses, thereby presenting a basic issue of credibility . . . . [*State* v. *Singh*, supra, 259 Conn.] 710." (Internal quotation marks omitted.) *State* v. *Ceballos*, supra, 266 Conn. 380–81. Second, although the argument that a defendant has a motive

to lie is permissible under *State* v. *Thompson*, supra, 266 Conn. 466–67, "[t]he state's objective of 'highlighting' [a motive to testify untruthfully] may be accomplished by other, proper means." *State* v. *Singh*, supra, 259 Conn. 711. Third, the essence of the state's argument goes to the severity of the improprieties, but the improprieties were not so severe in the cases that govern our analysis. See *State* v. *Angel T.*, supra, 292 Conn. 288–95; *State* v. *Singh*, supra, 723–25; *State* v. *Alexander*, supra, 254 Conn. 300–308; cf. *State* v. *Ceballos*, supra, 407–17 (*Singh* violations and other impropriety overcame absence of defendant's objection to improprieties).

We cannot say there is no reasonable likelihood that the verdict would have been different absent the improprieties. *State* v. *Angel T.*, supra, 292 Conn. 287. Therefore, we conclude that the defendant is entitled to a new trial.

## II

We turn finally to the defendant's claim that the court improperly denied his motion to suppress evidence of the knife, depriving him of his rights under the fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut to be free from unreasonable seizures. We conclude that the court properly denied the motion in reliance on the consent exception to the warrant requirement.

"[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search [or seizure] that is conducted pursuant to consent." (Internal quotation marks omitted.) *State* v. *Nowell*, 262 Conn. 686, 699, 817 A.2d 76 (2003). "Whether there was valid consent . . . is a factual question that will not be lightly overturned on appeal. . . . The state has the burden to establish the voluntariness of the consent, and the trial court's finding in that regard will

not be upset by [a reviewing] court unless clearly erroneous." (Citations omitted; internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 314–15, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000).

The following additional facts adduced at the hearing on the defendant's motion to suppress evidence are relevant. When police initially responded to the scene of the altercation, they considered the defendant to be a victim. When the defendant asked for a ride home, responding Officer Michael Reo accommodated him in the interest of the defendant's safety as the defendant appeared intoxicated. Before the defendant entered the police cruiser, Reo informed the defendant he would conduct a patdown as part of standard police procedure for anyone not under arrest entering a police cruiser. The defendant then told Reo about the utility knife in his possession and handed it to Reo. At the hearing, defense counsel agreed that the defendant voluntarily handed the knife to the officer. When Reo and the defendant arrived at the defendant's home, Reo was concerned for the defendant's safety, and informed the defendant that he could retrieve the knife from the police department when "he sobered up." There was no evidence at the hearing that the defendant had any objection to that plan. Less than an hour later, Reo learned from a radio transmission that the defendant was a suspect. Sometime after that, Reo processed the knife as evidence at police headquarters.

The court found that the defendant consented and handed the knife over voluntarily, and that police did not exceed the scope of that consent. See *State* v. *Cobb*, supra, 251 Conn. 314–16. The record supports this finding, which is not clearly erroneous. Therefore, the defendant's claim fails.[15]

---

[15] The defendant also claims on appeal that the police initially seized the knife pursuant to the community caretaking function exception to the warrant requirement, but that the seizure became impermissible when its

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

purpose changed and police did not obtain a warrant. This argument does not apply to the present case. The court based its decision to deny the defendant's motion on the defendant's *consent,* not on the community care-taking exception to the warrant requirement.