******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* A. M.*
(AC 34910)

Lavine, Alvord and Harper, Js.

*Argued October 16, 2014—officially released March 24, 2015*

(Appeal from Superior Court, judicial district of
Danbury, Pavia, J.)

*Bethany L. Phillips*, for the appellant (defendant).

*Jennifer F. Miller*, special deputy assistant state's
attorney, with whom, on the brief, were *Stephen J.
Sedensky III*, state's attorney, and *Colleen P. Zingaro*,
assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, A. M., appeals from the judgment of conviction, rendered following a jury trial, of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (2), three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), and sexual assault in the fourth degree in violation of General Statutes § 53a-73a. On appeal, the defendant claims that (1) the trial court improperly denied his motion for a judgment of acquittal because there was insufficient evidence to sustain the jury's verdict, (2) he was denied his right to a fair trial as a result of prosecutorial impropriety that occurred during rebuttal argument, (3) the court improperly determined that the complainant's confidential records should not be disclosed to the defendant, (4) the court improperly permitted the state to reopen the direct examination of the complainant, (5) the court improperly allowed a video recorded forensic interview (forensic video) to be admitted into evidence under the tender years exception to the rule against hearsay and under the *Whelan* rule,[1] and (6) the court violated his rights under the federal and state constitutions when it admitted the forensic video, specifically, his right to confront the complainant under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).[2] We agree with the defendant in regard to his second claim, and, therefore, reverse the judgment of conviction and remand the case for a new trial.

The jury reasonably could have found the following facts. The defendant was dating the complainant's mother, H, and moved into H's house with the complainant, and H's two other children in the late summer of 2003. In August, 2009, the complainant told H's cousin, A.K., that the defendant had touched her inappropriately. Specifically, she told A.K. that the defendant inappropriately touched her buttocks while she was cleaning dishes. After A.K. alerted H about the allegations, H allowed the defendant to ask the complainant about the allegations, and he apologized if he "ever touched [her] in any way . . . ."

In March, 2010, a family member of H went to the complainant's father, J, and spoke to him about the allegations. The next day, J spoke with the complainant and, during their conversation, the complainant cried and told him that the defendant had grabbed her buttocks. J reported the allegation to the Danbury Police Department and spoke to Officer Joseph Pastrana. After J reported the allegations to Pastrana, J and members of the Danbury Police Department visited the complainant's home in order to evaluate her well-being. At the home, Pastrana spoke to the defendant, who denied

any wrongdoing, and the complainant spoke with a female officer and informed that officer that the defendant had touched her inappropriately. At this time, for her safety, the complainant was removed from the home for two nights.

Pastrana then contacted the Danbury Police Department youth bureau as well as the Department of Children and Families. The defendant provided a sworn statement to the youth bureau, in which he denied any wrongdoing and hypothesized that the allegations perhaps stemmed from his strict parenting style. Meanwhile, on March 25, 2010, Donna Meyer, a forensic interviewer and director of the Danbury Multi-Disciplinary Team (team), interviewed the complainant regarding the alleged sexual abuse. This interview was videotaped as well as transcribed. The complainant told Meyer of various events of sexual abuse by the defendant. The dates of these incidents initially were described to Meyer as occurring after August, 2009, and later were stated by the complainant to have occurred before such time. The present matter commenced with the execution of an arrest warrant on April 20, 2010.

The complainant further was examined on April 29, 2010, by Veronica Ron-Priola, a medical examiner for child abuse cases. Ron-Priola testified at trial that there was no physical evidence of sexual abuse, but stated that a lack of evidence would not necessarily be inconsistent with the complainant's allegations of sexual abuse.[3] After this examination, Ron-Priola spoke to the team regarding her concern for the complainant.

The defendant's trial began on March 30, 2012, and concluded on May 3, 2012. The state called the complainant to testify. At this time, the complainant was twelve years old. The complainant initially stated that the defendant sexually assaulted her six or seven times by inappropriately touching her buttocks. Later during her testimony, the complainant stated that the defendant inappropriately touched her maybe two or three times. During cross-examination, the complainant stated that she had lied about what she had said to H, regarding the defendant. Later during trial, the complainant refused to testify to any other incident involving the defendant other than when he allegedly touched her buttocks. The defendant subsequently presented witnesses during trial to attack the complainant's credibility.

On May 3, 2012, the jury found the defendant guilty of attempt to commit sexual assault in the first degree, five counts of risk of injury to a child, sexual assault in the first degree, and sexual assault in the fourth degree. The defendant filed a motion for a judgment of acquittal, which was denied. Thereafter, the court sentenced the defendant to a total effective term of twenty years imprisonment, execution suspended after twelve years, followed by twenty years of probation

with special conditions. On August 7, 2012, the defendant filed the present appeal. Additional facts will follow as necessary.

I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal because the evidence was insufficient to support his conviction. We review this claim first due to the nature of the remedy. "[I]f the defendant prevails on the sufficiency claim, [he] is entitled to a directed judgment of acquittal rather than to a new trial." *State* v. *Moore*, 100 Conn. App. 122, 126 n.2, 917 A.2d 564 (2007). The defendant claims that because the forensic video was inadmissible as evidence and the complainant's testimony was inconsistent both in the forensic video and at trial, the evidence presented at trial was "insufficient to permit the jury to find him guilty beyond a reasonable doubt." We disagree.

"Our standard of review for claims of insufficient evidence is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Cancel*, 149 Conn. App. 86, 95, 87 A.3d 618, cert. denied, 311 Conn. 954, 97 A.3d 985 (2014).

"In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable." (Internal quotation marks omitted.) *State* v. *Jordan*, 314 Conn. 89, 106–107, 101 A.3d 179 (2014).

The defendant's sufficiency of the evidence claim is premised on whether the jury believed the complainant.

"We also are mindful that [q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *James E.*, 154 Conn. App. 795, 802,     A.3d     (2015). After weighing the credibility of the witnesses, it was within the sole province of the jury to make a determination on the witness' credibility in order to find against the defendant. On the basis of the foregoing, we conclude that there was sufficient evidence for the jury to have reached its verdict. Therefore, the defendant's insufficiency of the evidence claim fails.

## II

Second, the defendant claims that he was denied his right to a fair trial as a result of prosecutorial impropriety that occurred during rebuttal argument. Specifically, the defendant argues that the prosecutor's comments, regarding the defendant's failure to testify, constituted prosecutorial impropriety and denied him a fair trial. We agree.

The defendant challenges a string of comments made by the prosecutor during rebuttal argument.[4] In these remarks, the prosecutor commented on the defendant's failure to testify twice when she stated:

"[The Prosecutor]: . . . This is the other thing. *Counsel did not present his client to testify.* That's their right guaranteed by the constitution if any of us were accused. But there is evidence as to things that he said. His sworn statement. Also, testimony by a couple of police officers as to what he said to them, and that's before you. . . .

"*You've got to look at the credibility of the defendant as well. I mean, he didn't testify.* Again, that's his right, but there are some statements that are contained in the evidence. One is which that I've just referred to was his sworn statement as well as some statements by the police that he made the night he was arrested." (Emphasis added.)

The defendant claims on appeal that the comments made by the prosecutor during rebuttal argument were improper and deprived him of his constitutional right to due process. We agree with the defendant and focus our analysis on the prosecutor's comments that referenced the defendant's failure to testify.

We begin with our standard of review. "[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the

first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 361, 897 A.2d 569 (2006).

"[Our Supreme Court has] previously acknowledged that prosecutorial [impropriety] can occur in the course of closing argument. . . . Such argument may be, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact." (Citations omitted; internal quotation marks omitted.) *State* v. *Mills*, 57 Conn. App. 202, 205, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000). When reviewing whether prosecutorial impropriety occurred "during closing argument, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) Id.

A

In the first step of our analysis, we must determine whether an impropriety occurred. "The ultimate test of whether a prosecution argument indirectly and impermissibly comments on the defendant's failure to testify is whether, because of its language and context, the jury would naturally and necessarily interpret it as comment on the defendant's failure to testify." (Internal quotation marks omitted.) *State* v. *Downing*, 68 Conn. App. 388, 398, 791 A.2d 649, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002).

"It is well settled that comment by the prosecuting attorney . . . on the defendant's failure to testify is prohibited by the fifth amendment to the United States constitution. *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965). . . . Our legislature has given statutory recognition to this right by virtue of its enactment of . . . [General Statutes] § 54-84. In determining whether a prosecutor's comments have encroached upon a defendant's right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify? . . . Further, in applying this test, we must look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury. . . . Finally, [w]e also recognize that the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Parrott*, 262 Conn. 276, 292–93, 811 A.2d 705 (2003).

In the present case, the prosecutor's comments dis-

cussing the defendant's failure to testify were a clear violation of § 54-84.[5] The statute is unambiguous that a prosecuting official under any circumstance "shall not" comment upon the defendant's refusal to testify. General Statutes § 54-84. Here, when the prosecutor stated, "[y]ou've got to look at the credibility of the defendant as well. I mean, he didn't testify," she spoke about the defendant's failure to testify while simultaneously attacking his credibility because he chose not to testify. This court has stated that "[a]n indirect remark by the prosecuting attorney which draws the jury's attention to the fact that the accused failed to testify may also violate the accused's right." (Internal quotation marks omitted.) *State* v. *Colon*, 70 Conn. App. 707, 712–13, 799 A.2d 317, cert. denied, 261 Conn. 933, 806 A.2d 1067 (2002). Although previously in her rebuttal argument, the prosecutor acknowledged the defendant's constitutional right not to testify by stating, "[c]ounsel did not present his client to testify. That's their right guaranteed by the constitution if any of us were accused," in the context of the entire trial, the prosecutor's comments violated the defendant's due process rights. These comments were made by the prosecutor during rebuttal argument, specifically in relation to the defendant's credibility and his failure to testify. Accordingly, we conclude that the commentary regarding the defendant's failure to testify was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify and, therefore, such commentary "improperly and impliedly encouraged the jury to infer the defendant's guilt." *State* v. *Angel T.*, 292 Conn. 262, 286, 973 A.2d 1207 (2009).

B

In step two of our analysis, we must determine whether the prosecutor's improper statements deprived the defendant of his due process right to a fair trial. This analysis requires the court to examine the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), to determine whether the prosecutor's conduct rose to a level that makes the resulting conviction a denial of due process. The *Williams* factors include "the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Mills*, supra, 57 Conn. App. 205–206.

We start by examining the three *Williams* factors most pertinent to our analysis: the severity of the improprieties, the centrality of the improprieties to the critical issues of the case, and the strength of the state's case. We begin our analysis with the severity of the impro-

prieties.

In the present case, the prosecutor's impropriety was severe because the prosecutor commented on the defendant's failure to testify and instructed the jury to look at the credibility of the defendant because of his choice not to testify. In doing so, the prosecutor directly infringed upon the defendant's fifth amendment right not to testify. The prosecutor mentioned the defendant's failure to testify not once, but twice, during rebuttal argument. Our Supreme Court has stated that prosecutors may not express their opinions, even in an indirect manner, regarding the credibility of witnesses. See *State* v. *Williams*, supra, 204 Conn. 541. Further, our Supreme Court has stated that "[a]n indirect comment in argument to the court on a point of law is less serious than a comment in jury summation that asks the jury to infer that the defendant's silence is evidence of guilt." (Internal quotation marks omitted.) *State* v. *Parrott*, supra, 262 Conn. 293. In this case, the prosecutor specifically asked the jury to look at the credibility of the defendant because he did not testify. "Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . Furthermore, it is not the state's attorney's right or duty to stigmatize a defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Mills*, supra, 57 Conn. App. 207.

A prosecutor, by virtue of her position with the state, can wield great influence over a jury through expressions of her opinion. "These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor. . . . The jury is aware that [she] has prepared and presented the case and consequently, may have access to matters not in evidence . . . which the jury may infer to have precipitated the personal opinions." (Citations omitted; internal quotation marks omitted.) Id., 208. In the present case, because of the prosecutor's position as a public official, the fact that she infringed upon the defendant's fifth amendment right, and the fact that the statements were made during the prosecutor's rebuttal argument, we conclude that such comments were not only improper, but rose to the level of a severe impropriety.

Next, we look to the centrality of the improprieties to the critical issues of the case and the strength of the state's case. In *State* v. *Ceballos*, 266 Conn. 364, 415–17, 832 A.2d 14 (2003), our Supreme Court, in reversing a judgment of conviction after finding that the prosecutor's improprieties deprived the defendant of a fair trial, discussed these two factors together, and we find it appropriate to do so here. The critical issue in this case was credibility, whether the jury was to believe the defendant or the complainant. "Our law is well settled that it is a jury's duty to determine the credibility of witnesses and to do so by observing firsthand their

conduct, demeanor and attitude." *State* v. *Johnson*, 288 Conn. 236, 265, 951 A.2d 1257 (2008). The prosecutor's second mention of the defendant's not having testified, "[y]ou've got to look at the credibility of the defendant as well. I mean, he didn't testify," links the issue of the credibility of the defendant directly to the fact that he did not testify. By commenting on the defendant's failure to testify during rebuttal argument, the prosecutor implied to the jury that it should glean a negative inference from this fact. Specifically, the implication was that the jury should infer that the defendant, by not testifying, therefore was not credible and therefore was guilty.

The prosecutor's improper comments during rebuttal argument were made in conjunction with the fact that the state did not have a strong case. In *Ceballos*, our Supreme Court stated: "[A] child sexual abuse case lacking conclusive physical evidence, when the prosecution's case rests on the credibility of the [complainant] . . . is not particularly strong . . . ." (Internal quotation marks omitted.) *State* v. *Ceballos*, supra, 266 Conn. 416. Similarly, the improprieties in this case were directly connected to the critical issue of the credibility of the defendant. Our Supreme Court further stated: "In our view, without independent physical evidence to prove that the defendant had sexually assaulted [the complainant], or even that [the complainant] had been sexually assaulted at all, the significance of the [prosecutor's] improper conduct increases considerably." (Internal quotation marks omitted.) Id., 416–17. This case is factually similar to *Ceballos*; there was no physical evidence of the alleged abuse, the testimony was conflicting as to the complainant's credibility, and there was only one witness, the complainant, and the complainant refused to answer all of the questions put to her.

In the present case, the strength of the state's case hinged upon the credibility of the complainant. This court, in *State* v. *Jones*, 139 Conn. App. 469, 56 A.3d 724 (2012), cert. granted, 307 Conn. 957, 958, 59 A.3d 1192 (2013), analyzed the effect that the weakness of the state's case has on a claim of prosecutorial impropriety. In *Jones*, "[t]he case turned entirely on the credibility of the complainant against that of the defendant. The state did not present any conclusive physical evidence or independent testimony that was not affected by the prosecutorial improprieties. . . . Our Supreme Court has ruled that a case turning entirely on the credibility of the [complainant] is not strong." (Citation omitted; internal quotation marks omitted.) Id., 481. Moreover, in *State* v. *Angel T.*, supra, 292 Conn. 293, our Supreme Court ruled that the state's case "was not sufficiently strong so as to not be overshadowed by the impropriety." In that case, the state's case relied on the testimony of a minor child, as well as the testimony of two corroborating witnesses. Id. In this case, unlike in

*Angel T.*, there are no corroborating witnesses, only the testimony of the complainant, and therefore the state's case was not strong.

This case does not have "substantial evidence supporting a conviction that is unaffected by the [violations of *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002)], which could ameliorate their prejudice, such as a confession . . . testimony of accomplices . . . testimony of eyewitnesses other than the [complainant] . . . or physical evidence corroborating the complainant's testimony over the defendant's testimony . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, supra, 139 Conn. App. 482. Therefore, we conclude that the state's evidence, while sufficient to result in a conviction, was not particularly strong. See also *State* v. *Singh*, supra, 724.

The final three *Williams* factors, the extent to which the impropriety was invited by defense conduct or argument, the frequency of the impropriety, and the strength of the curative measures adopted, are collectively given less weight in this case, given the facts. See *State* v. *Jones*, supra, 139 Conn. App. 482. "Although the strength of the state's case, the centrality of the improprieties and the severity of the improprieties propels our analysis, we give due consideration to the other *Williams* factors." Id., 482 n.14.[6] The frequency of the impropriety and whether or not a curative measure was adopted will be discussed in turn.

The prosecutor's impropriety was limited to rebuttal argument. While looking only at the prosecutor's comments regarding the defendant's failure to testify, the improper comments occurred twice during the state's rebuttal argument. Such comments were not pervasive throughout the entire trial, but they do not need to be in order to violate the defendant's due process right. See *State* v. *Ceballos*, supra, 266 Conn. 376. ("[m]oreover, prosecutorial misconduct of constitutional proportions may arise during the course of closing argument, thereby implicating the fundamental fairness of the trial itself" [internal quotation marks omitted]).

Finally, we look to whether a curative measure was adopted and the strength of such curative measure. The state emphasizes, and we acknowledge, that the defendant did not object to the prosecutorial conduct at trial; but this alone is not fatal to his case. See *State* v. *Angel T.*, supra, 292 Conn. 289. The state also contends that any impropriety was cured by the court's jury instruction.[7] Yet, "a general instruction does not have the same curative effect as a charge directed at a specific impropriety, particularly when the [impropriety] has been more than an isolated occurrence." *State* v. *Ceballos*, supra, 266 Conn. 413. In this case, although the court instructed the jury properly, it was a general jury instruction, and was not directed at any specific impropriety, and therefore the instruction was not cura-

tive in nature.

This case is similar to *Jones*. In *Jones*, the case fell "within a line of cases in which our Supreme Court . . . found that prosecutorial impropriety resulted in substantial prejudice depriving a defendant of a fair trial and due process, even in the absence of an objection or request for specific curative instructions from a defendant. . . . [I]n each of these cases, the defendant failed to object to or request curative instructions for *Singh* violations, the state's case was not strong and amounted to a credibility contest between the defendant and one or two of its witnesses, the impropriety augmented the state's case on a central issue of credibility rather than a peripheral point, the impropriety was repeated on cross-examination and in closing arguments, and the impropriety was uninvited. . . . In cases that would otherwise present a similar *Williams* analysis, our Supreme Court has not found substantial prejudice where one or more of these *Williams* factors is absent." (Citations omitted.) *State* v. *Jones*, supra, 139 Conn. App. 483–84.

The facts in *Jones* are similar to the facts in the present case, leading us to conclude, as this court did in *Jones*, that the defendant's due process rights were violated by the prosecutorial impropriety occurring during rebuttal argument. Therefore, we conclude that as to the final three *Williams* factors, the improprieties were not invited, no curative instructions were given because they were not requested, the court's final jury instruction that the jury should not draw an adverse inference from the defendant's failure to testify did not cure the prosecutor's improper comments, and the improprieties were not pervasive, but confined to rebuttal argument, a time at which the defendant had no other opportunity to refute such comments.

Taking into consideration the factors set forth in *State* v. *Williams*, supra, 204 Conn. 540, we hold that the prosecutorial impropriety in the present case deprived the defendant of his due process right to a fair trial. The prosecutorial impropriety attacked the central issue in the case, the credibility of the defendant, when commenting on his failure to testify. Therefore, we cannot say there is no reasonable likelihood that the verdict would have been different absent the improprieties. See *State* v. *Jones*, supra, 139 Conn. App. 485. Accordingly, because the defendant was deprived of his constitutional right to a fair trial, we reverse the judgment of conviction and remand the case to the trial court for a new trial.

### III

Third, the defendant claims that the court improperly determined that it should not disclose to the defendant the complainant's confidential records, which included her medical, mental health, educational, and Depart-

ment of Children and Families records. Because this issue is likely to arise on remand, we briefly discuss it here and conclude that the court did not abuse its discretion. In *State* v. *Liborio A.*, 93 Conn. App. 279, 889 A.2d 821 (2006), this court noted: "While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not an easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of her confidential records. . . . On review, we must determine whether the trial court's decision constituted an abuse of discretion. . . . In making such a determination, this court must conduct an in camera inspection of the sealed records. . . .

"The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . . Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis. . . . [W]hen the trial court has reviewed the records in camera, access to the records must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Citations omitted; internal quotation marks omitted.) Id., 289–90.

After a careful review of the records, we determine that the information contained in the records would not shed light on the ability of the complainant to comprehend, know and correctly relate the truth. We therefore conclude that the court did not abuse its discretion in its determination that the complainant's confidential records should not be disclosed to the defendant.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the complainants of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the complainant or others through whom the complainant's identity may be ascertained. See General Statutes § 54-86e.

[1] See *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

[2] Because we reverse the judgment of the court on the defendant's claim of prosecutorial impropriety, we do not reach claim four, as it is unlikely to arise on retrial. Additionally, the court admitted the forensic video into evidence under three exceptions to the hearsay rule: the tender years exception, the rule of *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), and the medical treatment exception. On appeal, the defendant did not challenge the admission of the forensic video pursuant to the medical treatment exception. Therefore, we do not discuss claims five and six raised by the defendant, which involve the admission of the forensic video. "[W]here alternative grounds found by the reviewing court and unchallenged on appeal would support the trial court's judgment, independent of some challenged ground,

the challenged ground that forms the basis of the appeal is moot because the court on appeal could grant no practical relief to the complainant." (Internal quotation marks omitted.) *Horenian* v. *Washington*, 128 Conn. App. 91, 99, 15 A.3d 1194 (2011).

[3] Ron-Priola testified as to what the complainant explained to her prior to her examination: "[The complainant stated] [t]hat [the defendant] had touched her breasts. She pointed to her genitals, she didn't want to say the name . . . and her buttocks. . . . She told me that he had tried to put his thing in her butt, and I asked her what she meant by his thing, and she was very reluctant to say it, and I said, the penis, and she said yes, and he tried to put it in her butt, but he couldn't."

[4] The defendant also claims that the prosecutor improperly discussed the defendant's failure to put on a defense:

"[The Prosecutor]: . . . Now, one of the things that—that counsel touched on quickly in his closing argument was about the police investigation, and it was two weeks long, this and that. I don't know if you felt this way or you thought this way, but when I was sitting here listening to how John Caputo with forty years of experience in law enforcement, twenty with state police and twenty on his own as a private investigator, not one person came in here and said, '[the complainant] told me this didn't happen.' Not one. He didn't come up with—I was waiting for what was going to be said. Was there something? Was there someone that said, '[the complainant] told me in secret that this didn't happen'? No.

"I went, that's it? Two years of an investigation, and that's it? And they don't have an obligation to put a case on. It's my burden of proof. They don't want to put a case on, that's fine. But when you endeavor to put one on, and this is all the evidence you come up with, you've got to question two years of looking, and that's it?

"Now, it comes down, I think, to credibility. Who do you believe? Because there's no physical evidence, but there is testimony from witnesses. You're gonna judge their credibility . . . ."

Because we find that the other comments by the prosecutor were improper and deprived the defendant of a fair trial, we do not address this comment.

[5] General Statutes § 54-84 provides in relevant part: "(a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

[6] In the present case, the defendant claims that the improprieties were not invited. After the state's concession at oral argument and our review of the record, it is clear that the state did not present any arguments to contest the defendant's claim. We therefore agree that the improprieties were not invited.

[7] The court stated in its general instruction: "Now, the defendant has elected not to testify in this particular case. An accused has the right and the option to testify or not to testify at his or her own trial, and is under no obligation to testify. He has a constitutional right that is protected by the [United States] as well as the Connecticut constitutions not to testify, and you may draw no unfavorable inferences from the defendant's choice not to testify in this particular instance."