******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., with whom McDONALD, J., joins, dissenting. I respectfully disagree with the majority's conclusion that the Appellate Court incorrectly determined that the violations of *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002), in the present case deprived the defendant, Shelvonn Jones, of a fair trial. I further disagree with the majority's conclusion that "[i]n a case that pits the testimony of the defendant against that of the [complainant in the present case, George Harris], such that the [complainant's] version of events is directly at odds with the defendant's account of the facts, and there is no way to reconcile their conflicting testimony except to conclude that one of them is lying, it is unlikely that asking the defendant directly whether the [complainant] is lying ever could be so prejudicial as to amount to a denial of due process." The majority acknowledges that questioning in which the prosecution asks a defendant to comment on the veracity of other witnesses "is never appropriate" and that "we consistently have declined the state's invitation to carve out an exception to the prohibition against 'are they lying' questions in cases involving pure credibility contests." Nevertheless, the majority seems to carve out that explicit exception for purposes of analyzing whether the defendant was harmed by the improper questioning, reasoning that "[o]ur refusal to adopt the exception advanced by the defendant, however, does not preclude us from acknowledging the logic that underlies that proposed exception in determining whether the defendant was *prejudiced* by the prosecutor's questioning . . . ." (Emphasis in original.) In doing so, the majority weakens, if not, destroys the *Singh* doctrine. Indeed, I cannot now discern a situation wherein we will hold any *Singh* violation to be harmful. In my view, if we consider these questions improper and have clearly stated that prohibition so that prosecutors, who are officers of the court, know that they are improper, we must hold such officers of the court accountable. We cannot weaken the harmless error analysis of such improprieties so as to make the *Singh* doctrine a paper tiger not only unworthy of respect, but also totally disregarded by some prosecutors. I would conclude that the Appellate Court properly applied the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), and properly concluded that the improprieties, the existence of which the state concedes, deprived the defendant of a fair trial. Accordingly, I respectfully dissent.

I agree with the facts and procedural history set forth by the majority. I therefore begin by reciting the relevant principles of law. As the majority explains: "In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether

any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. . . . To determine whether the defendant was deprived of his due process right to a fair trial, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair . . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Gould*, 290 Conn. 70, 77–78, 961 A.2d 975 (2009).

"Under the well established analysis of *State* v. *Williams*, supra, 204 Conn. 540, we consider: (1) the extent to which the [impropriety] was invited by defense conduct or argument; (2) the severity of the [impropriety]; (3) the frequency of the [impropriety]; (4) the centrality of the [impropriety] to the critical issues in the case; (5) the strength of the curative measures adopted; and (6) the strength of the state's case. In determining whether the defendant was denied a fair trial [by virtue of prosecutorial impropriety] we must view the prosecutor's comments in the context of the entire trial. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Angel T.*, 292 Conn. 262, 287–88, 973 A.2d 1207 (2009).

In *State* v. *Payne*, 303 Conn. 539, 562–63, 34 A.3d 370 (2012), we clarified "that, when a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process. . . . On the other hand . . . if the defendant raises a claim that the prosecutorial improprieties infringed a specifically enumerated constitutional right, such as the fifth amendment right to remain silent or the sixth amendment right to confront one's accusers, and the defendant meets his burden of establishing the constitutional violation, the burden is then on the state to prove that the impropriety was harmless beyond a reasonable doubt." (Citation omitted.)

In the present case, the defendant asserts that the prosecutorial improprieties infringed on his right to testify and present a defense in violation of the fifth and sixth amendments to the United States constitution. See *Rock* v. *Arkansas*, 483 U.S. 44, 51–53, 107 S. Ct.

2704, 97 L. Ed. 2d 37 (1987) (criminal defendant's right to testify guaranteed under fifth, sixth and fourteenth amendments to United States constitution). I agree with the defendant and would conclude that because the improprieties infringed on the defendant's right to testify and present a defense, the state has the burden of proving that there is no reasonable likelihood that the jury's verdict would have been different in the absence of the improprieties at issue in the present case.[1] Specifically, the defendant chose to exercise his right to testify in his own defense at trial, but the prosecutor impinged on that right by using his decision to testify as an opportunity to improperly weaken the defendant's credibility through its conceded and repetitious violation of *Singh*. Put another way, the defendant was not fully able to properly exercise his right to testify in his own defense because the prosecutor used the defendant's decision to exercise that fundamental constitutional right as an opportunity to improperly question him on the ultimate issue in the case—credibility.

"As is evident upon review of these factors, it is not the prosecutor's conduct alone that guides our inquiry, but, rather, the fairness of the trial as a whole. . . . We are mindful throughout this inquiry, however, of the unique responsibilities of the prosecutor in our judicial system. A prosecutor is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his [or her] office, [the prosecutor] usually exercises great influence upon jurors. [The prosecutor's] conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he [or she] represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. If the accused be guilty, he [or she] should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and [well established] rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury [has] no right to consider." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 701–702.

"Regardless of whether the defendant has objected to an . . . [impropriety], a reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the [impropriety] is viewed in light of the entire trial. The application of the *Williams* factors, therefore, is identical to the third and fourth prongs of *Golding*,[2] namely, whether the constitutional violation exists, and whether it was

harmful. . . . [Thus], following a determination that prosecutorial [impropriety] has occurred, regardless of whether it was objected to, an appellate court must apply the *Williams* factors to the entire trial." (Footnote added; internal quotation marks omitted.) *State* v. *Andrews*, 313 Conn. 266, 280, 96 A.3d 1199 (2014).

In order to provide a background for my analysis, I provide a brief summary of *State* v. *Singh*, supra, 259 Conn. 693. In *Singh*, the defendant had been convicted of arson in the first degree after a jury trial. Id., 694–95. On appeal, the defendant asserted, inter alia, that the prosecutor had improperly asked the defendant to comment on the veracity of other witnesses and highlighted that testimony in the closing argument. Id., 702. Recognizing that this court "previously [had] not had the opportunity to address the well established evidentiary rule that it is improper to ask a witness to comment on another witness' veracity," this court explained that the majority of jurisdictions find such questions to be improper. Id., 706.

This court further explained the rationale behind the rule prohibiting prosecutors from asking a defendant to comment on the veracity of other witnesses. "First, it is well established that determinations of credibility are for the jury, and not for witnesses. . . . Consequently, questions that ask a defendant to comment on another witness' veracity invade the province of the jury. . . . Moreover, [a]s a general rule, [such] questions have no probative value and are improper and argumentative because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." (Citations omitted; internal quotation marks omitted.) Id., 707–708. "Second, questions of this sort also create the risk that the jury may conclude that, in order to acquit the defendant, it must find that the witness has lied. . . . This risk is especially acute when the witness is a government agent in a criminal case. . . . A witness' testimony, however, can be unconvincing or wholly or partially incorrect for a number of reasons without any deliberate misrepresentation being involved . . . such as misrecollection, failure of recollection or other innocent reason." (Citations omitted; internal quotation marks omitted.) Id., 708. "Similarly, courts have long admonished prosecutors to avoid statements to the effect that if the defendant is innocent, the jury must conclude that witnesses have lied. . . . The reason for this restriction is that [t]his form of argument . . . involves a distortion of the government's burden of proof. . . . Moreover, like the problem inherent in asking a defendant to comment on the veracity of another witness, such arguments preclude the possibility that the witness' testimony conflicts with that of the defendant for a reason other than deceit." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 709–10.

In *Singh*, this court concluded that the prosecutor's conduct in asking the defendant to comment on the veracity of other witnesses and highlighting that testimony in the closing argument was improper. Id., 712. Further, this court concluded that the state had failed to demonstrate that there was not a reasonable likelihood that the jury's verdict would have been different in the absence of these and other improprieties. Id., 725. Accordingly, this court concluded that the defendant had been deprived of his right to a fair trial, reversed his conviction, and remanded the case for a new trial. Id.

In the present case, the state concedes that three questions and one statement in the prosecutor's closing argument were improper under *Singh*. As the majority properly explains, the conceded improprieties were as follows: "The three questions were: (1) '[A]ll this testimony from [the complainant] then about the bus stop; that was a lie?' (2) 'And, all the police officers' testimony [about the robbery] is a lie?' (3) 'So, what [a police officer] testified to today [about finding marijuana in the backseat of his police car] is all false?' In addition, during closing argument, the prosecutor paraphrased the defendant's answer when the defendant was asked whether he had told the police that he was trying to buy marijuana prior to the altercation as, 'I never said that; the police are lying apparently.' "

On the basis of the state's concession that the four statements were improper, I turn to the *Williams* factors to determine whether they were prejudicial. First, I consider whether the improprieties were invited by defense conduct or argument. *State* v. *Williams*, supra, 204 Conn. 540. Although the majority does not rely extensively on this *Williams* factor to support its conclusion, it does reason that "[i]n a case that pits the testimony of the defendant against that of the [complainant], such that the [complainant's] version of events is directly at odds with the defendant's account of the facts, and there is no way to reconcile their conflicting testimony except to conclude that one of them is lying, it is unlikely that asking the defendant directly whether the [complainant] is lying ever could be so prejudicial as to amount to a denial of due process." In *State* v. *Ceballos*, 266 Conn. 364, 409, 832 A.2d 14 (2003), this court rejected a similar claim. In *Ceballos*, the state reasoned that the *Singh* violations were "invited by the ' "only possible" ' defense theory that [the complainant] had fabricated her claims." Id. This court rejected the state's claim concluding that "we reject the notion that, standing alone, a legitimate defense theory can be viewed as inviting improper conduct on the part of the [prosecutor]." Id. Similarly, in the present case, I would reject the notion that the mere fact that the testimony of the defendant and the testimony of the complainant are directly at odds with each other can mean that the defendant invited the

impropriety or otherwise weigh in the state's favor under a *Williams* analysis.

I next turn to the severity and frequency of the improprieties. The state claims, and the majority concludes, that the improprieties were not severe or frequent. I disagree. The majority states that "[p]erhaps the most significant reason why the defendant in the present case was not unduly prejudiced by the prosecutor's *Singh* violations is that two of them—arguably the two most serious violations because they pitted the defendant's credibility directly against that of the police— were not directed at the assault charge but, rather, at the drug charge, which resulted in an acquittal. . . . Because the jury found the defendant not guilty of the drug charge, however, those two improprieties could not have prejudiced the defendant unduly with respect to that charge." (Footnotes omitted.) The majority further reasons that "[n]or can we conclude that those improprieties prejudiced the defendant with respect to the assault charge because it is undisputed that no police officer provided material testimony with respect to that charge." I disagree. I recognize that this court has reasoned: "[T]he inquiry into whether there was a fair trial requires an examination of the impact of the [improprieties] on each conviction. Depending on the outcome of the analysis, the conviction on some charges may be allowed to stand, while others may be reversed." *State* v. *Spencer*, 275 Conn. 171, 182, 881 A.2d 209 (2005). This principle, however, does not mean that we parse improprieties by the charge to which they might be most directly related. The majority does not cite, and I cannot find, any case in which this principle has been applied in this way. Instead, the principle means that the sum total of the improprieties in a trial may be prejudicial to some charges that are particularly weak and have little physical evidence, but might not be prejudicial to other charges that are particularly strong, have physical evidence and do not involve credibility determinations.

In the present case, which ultimately involved a credibility determination, on three separate occasions the prosecutor deliberately violated *Singh* by explicitly asking the defendant to comment on the veracity of other witnesses and then emphasized that testimony in his closing argument. As we have recognized, the import of these improper questions is to distort the state's burden of proof and to make the jury feel like in order to acquit the defendant, they must find that the other witnesses are lying. *State* v. *Singh*, supra, 259 Conn. 709. The majority focuses on the fact that three of the *Singh* violations related to the testimony of police officers and concludes that these *Singh* violations are, therefore, irrelevant because no police officer provided material testimony on the charge of assault, for which the defendant was convicted. I disagree, and respectfully assert that the majority is missing the point. The

prosecutor did not ask the defendant to comment on the veracity of the police officers to undermine the credibility of those police officers, therefore, the fact that the defendant was acquitted of the marijuana charge is irrelevant. The prosecutor asked the defendant to comment on the veracity of the police officers to undermine the credibility of the defendant. These questions about the veracity of the police officers were part of an overall pattern that infected the fairness of the entire trial because they were an improper, yet integral part of the state's theory of the case—that the defendant is a liar. Therefore, the fact that the police officers did not provide material testimony on the assault charge is completely irrelevant. The *Singh* violations that related to the police officers contributed to the fundamental unfairness of the trial because they improperly undermined the credibility of the defendant. As this court has frequently recognized, "[b]ecause the inquiry must involve the entire trial, all incidents of [improprieties] must be viewed in relation to one another and within the context of the entire trial. The object of inquiry before a reviewing court in [due process] claims involving prosecutorial [impropriety], therefore, is . . . only the fairness of the entire trial, and not the specific incidents of [impropriety] themselves. Application of the *Williams* factors provides for such an analysis . . . ." (Internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 427, 902 A.2d 636 (2006).[3] Accordingly, I disagree with the majority that two of the four conceded violations are not relevant to our inquiry. As this court stated in *State* v. *Warholic*, 278 Conn. 354, 398, 897 A.2d 569 (2006), "the instances of prosecutorial [improprieties] were not isolated because they occurred during both the cross-examination of the defendant and the prosecutor's closing . . . arguments." In the present case, the improprieties involved the main witnesses in the trial and were repeated during the closing argument. Accordingly, I would conclude that this court must examine the prejudicial impact of all four improprieties as a whole and that, taken as a whole, they are severe.

The majority concludes as follows: "[B]ecause *Williams* requires that we determine whether the prosecutorial impropriety prejudiced the defendant by evaluating the impropriety in the context of the entire trial, we must consider whether it was possible for the jury to reconcile the testimony of the defendant and the [complainant] without concluding that one of them was lying. When, as in the present case, it is not possible to do so, there is no reasonable possibility that asking the defendant whether [another witness] testified truthfully would render the trial so unfair as to rise to the level of a due process violation because, in such circumstances, the risks that ordinarily attend such a question simply are not present. For example, asking the defendant in the present case whether [the complainant] was

lying could not have led the jurors to overlook the various, possible, innocent reasons for discrediting [the complainant's] testimony because the evidence and the parties' arguments did not allow for any such reasons. Moreover, there was no likelihood that the question invaded the province of the jury or reduced or distorted the state's burden of proof because, in order to decide the case, the jury itself was required to determine which of the two witnesses, [the complainant] or the defendant, was lying. Thus, the answer that the defendant gave in response to the prosecutor's improper 'is he lying' question, although irrelevant, could not have caused the defendant undue harm." I disagree.

Although the majority recognizes that "*Williams* requires that we determine whether the prosecutorial impropriety prejudiced the defendant by evaluating the impropriety in the context of the entire trial," the majority never conducts a thorough *Williams* analysis. Indeed, instead of using the six *Williams* factors to address all of the improprieties as a whole, the majority takes each of the four conceded improprieties and considers whether each individual impropriety, by itself, prejudiced the defendant. Such an analysis is incorrect. Instead, under *Williams*, we examine all of the improprieties together and the trial as a whole. *State* v. *Singh*, supra, 259 Conn. 723 ("whether the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process" [internal quotation marks omitted]). I respectfully disagree with the majority's approach and the majority's resultant conclusion.

In *Singh*, this court explicitly rejected the state's request to provide "an exception to the prohibition of questions and comments on witnesses' veracity when the defendant's testimony is the opposite of or contradicts the testimony of other witnesses, thereby presenting a basic issue of credibility . . . [that cannot] be attributed to defects or mistakes in a prior witness' perception or inaccuracy of memory, rather than to lying. . . . The state contends that such an exception is permissible because, under these circumstances, the jury's role is not usurped because it still must decide ultimately which testimony to believe." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 710–11. In rejecting the state's invitation to adopt such an exception, this court acknowledged that such an exception is unnecessary because the prosecutor may highlight inconsistencies "by other, proper means" and that it would be difficult to know when to apply such an exception because "testimony may be in direct conflict for reasons other than a witness' intent to deceive." Id., 711. In *Singh*, this court concluded that the prosecutorial improprieties, as a whole, deprived the defendant of a fair trial. Id., 725. By concluding in the present case that it is not "possible for the jury to reconcile the testimony of the defendant and the

[complainant] without concluding that one of them was lying," and that, in such a case, "there is no reasonable possibility that asking the defendant whether [another witness] testified truthfully" would render the trial fundamentally unfair, the majority essentially overrules *Singh*.

I next turn to whether the effect of the prosecutorial improprieties were mitigated by curative measures taken by the trial court. In the present case, I would agree with the Appellate Court that "no curative instructions were given because they were not requested . . . ." *State* v. *Jones*, 139 Conn. App. 469, 482, 56 A.3d 724 (2012).

As this court has explained "[w]hen defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Paul B.*, 315 Conn. 19, 37, 105 A.3d 130 (2014). "[W]e emphasize that counsel's failure to object at trial, while not by itself fatal to a defendant's claim, frequently will indicate on appellate review that the challenged comments do not rise to the magnitude of constitutional error . . . ." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 576, 849 A.2d 626 (2004). As this court concluded in *State* v. *Ceballos*, supra, 266 Conn. 415, "the prosecutorial [impropriety] in the present case . . . was sufficiently egregious to overcome the suggestion that defense counsel did not think it was unfair at the time." Accordingly, I would conclude that the lack of curative measures in the present case weighs in favor of the defendant.

The final two *Williams* factors are the centrality of the prosecutorial improprieties to the critical issues of the case, and the strength of the state's case. I consider it appropriate in the present case to review these factors together. See id. The improprieties in the present case went to the central issue in the trial—the credibility of the witnesses. There were no witnesses to the assault besides the defendant and the complainant. The evidence regarding the assault charge consisted of the differing versions of events offered by the complainant and the defendant. The parties both agree, and the majority concludes, that the case turned on credibility.

I agree with the Appellate Court when it reasoned as follows: "In light of the specific facts of this case, however, the significance of the [prosecutor's] improper conduct increases considerably. . . . First, the defendant was compelled to comment directly on the veracity of police witnesses. Th[e] risk [*Singh* violations pose] is especially acute when the witness is a government agent in a criminal case. . . . Indeed, Connecticut courts routinely instruct juries that they should evaluate the credibility of a police officer in the same

way that they evaluate the testimony of any other witness . . . no doubt to check the heightened credibility that government agents are afforded by some jurors. . . . Second, the defendant was compelled to comment directly on the veracity of the complainant. This elevated the risk that the jury may conclude that, in order to acquit the defendant, it must find that the witness has lied. . . . Our Supreme Court has recognized that these dangers [involve] a distortion of the government's burden of proof." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, supra, 139 Conn. App. 478–79. "Third, the prosecutor subtly but unmistakably mischaracterized the defendant's responses in a manner that 'emphasized the improper nature of the questions he had forced [the defendant] to answer.' . . . In closing argument, the prosecutor summed up the defendant's testimony by stating: 'Things are unraveling; one story won't work now. So what's the answer; the answer is, "I never said that;" ' the police are lying apparently.'" But in responding to the prosecutor's improper question, the defendant specifically did *not* testify that police were lying. He did testify that the complainant lied. And he did testify that one officer's testimony was 'false'— but that is to be distinguished from 'lying,' which means a deliberate falsehood. A witness' testimony . . . can be . . . wholly or partially incorrect for a number of reasons without any deliberate misrepresentation being involved . . . such as misrecollection, failure of recollection or other innocent reason. . . . The prosecutor's mischaracterization of the defendant's testimony elevated the risk of 'preclud[ing] the possibility that the witness' testimony conflict[ed] with that of the defendant for a reason other than deceit.' " (Citations omitted; emphasis altered; footnotes omitted.) Id., 479–80.

The only evidence the state introduced as to who initiated the altercation was the complainant's testimony. The parties agree that the case entirely turned on credibility. There can be no question that the conceded improprieties go directly to the credibility of the defendant as compared to the complainant and police officers, nor is there any debate that credibility was the central issue at trial. The complainant's rendition of events was contrary to the defendant, who maintained that it was the complainant who assaulted him.

This court has repeatedly concluded that prosecutorial improprieties are prejudicial when they impact the central issue in the case, such as a credibility issue between the victim and the defendant. For instance, in *State* v. *Ceballos*, supra, 266 Conn. 416, in examining the impact of prosecutorial improprieties in a case involving sexual assault where there was no physical evidence, this court concluded that "when the prosecution's case rests on the credibility of the victim, it is 'not particularly strong . . . .' " This court further reasoned that "all of the improprieties were connected directly to the critical issue, indeed the only disputed

issue at trial [credibility] . . . ." (Internal quotation marks omitted.) Id., 416. This court concluded that "without independent physical evidence to prove that the defendant had sexually assaulted [the victim], or even that [the victim] had been sexually assaulted at all, the significance of the [prosecutor's] improper conduct increases considerably." Id., 416–17. Similarly, in *State* v. *Alexander*, 254 Conn. 290, 291–92, 755 A.2d 868 (2000), the defendant was convicted of sexual assault in the fourth degree and risk of injury to a child. In that case we relied on the fact that the "improper comments directly addressed the critical issue in this case, the credibility of the victim and the defendant." Id., 308. We concluded that the prosecutorial impropriety deprived the defendant of a fair trial. Id. "There were no curative measures adopted, and the state's case was not particularly strong in that it rested on the credibility of the victim." Id.; see also *State* v. *Angel T.*, supra, 292 Conn. 295 (prosecutorial impropriety deprived defendant of fair trial when case was "a credibility contest between the defendant and his accusers"). In the present case, the prosecutorial improprieties went to the central issue in the case and the state's case was not strong.

I would assert that the final *Williams* factor, the strength of the state's case, weighs most strongly in favor of the defendant. The state and majority concede that the entire case against the defendant on the assault charge relied on the testimony of the defendant against the testimony of the complainant. There was not only no physical evidence, but also there was no eyewitness testimony. It is axiomatic that in making the determination of whether an impropriety is harmless, we must look to what other evidence, not tainted by the impropriety, was admitted to support the jury's conclusion. See, e.g., *State* v. *Thompson*, 266 Conn. 440, 456, 832 A.2d 626 (2003) (concluding that, although admission of certain testimony was abuse of discretion, it was harmless error because, inter alia, prosecutor did not emphasize or rely upon testimony during closing argument and there was significant other evidence of defendant's guilt); *State* v. *Hafford*, 252 Conn. 274, 297, 746 A.2d 150 ("[t]his court has held in a number of cases that when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt" [internal quotation marks omitted]), cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000). In the present case, it is undisputed that there was no other evidence regarding the assault charge besides the testimony of the defendant and the complainant. Therefore, the state's case was weak and there was absolutely no evidence to support the defendant's conviction that was not tainted by the improprieties. Accordingly, I would conclude that this *Williams* factor very strongly weighs in favor of the defendant, and that an overall analysis of the

*Williams* factors favors a remand to the trial court for a new trial.

Having reviewed all of the *Williams* factors, I would conclude that the state has not demonstrated, beyond a reasonable doubt, the reasonable likelihood that the jury's verdict would not have been different absent the sum total of the improprieties in the present case. *State* v. *Luster*, supra, 279 Conn. 442. The prosecutorial improprieties deprived the defendant of a fair trial because they was pervasive, uninvited by the defendant and were not subjected to specific curative measures. Moreover, the lack of physical evidence in the present case reduced the present case to a credibility contest between the defendant and the complainant, indicating that the jury may well have been unduly influenced by the improprieties. Accordingly, I agree with the Appellate Court's decision to order a new trial in the present case.

Therefore, I respectfully dissent.

[1] Nevertheless, even if I were to conclude that the defendant had the burden in this case, I would conclude that he has met that burden.

[2] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*)

[3] I recognize that we have relied on the fact that if a defendant is acquitted of one charge, it is relevant to determining how prejudicial the improprieties are in a particular case. In the present case, however, I would conclude that the fact that the jury acquitted the defendant of the drug charge, although relevant to our inquiry, its relevancy is diminished by the fact that the drug charge was particularly weak in the present case.